John LOUGHRAN et al., Appellants,

v.

UNITED STATES of America, Appellee.

MAURY CORPORATION, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 17653, 17696.

United States Court of Appeals District of Columbia Circuit.

Decided April 18, 1963.

Mr. A. Donald Mileur, Attorney, Department of Justice, with whom Asst. Atty. Gen. Ramsey Clark and Mr. Roger P. Marquis, Attorney, Department of Justice, were on the motion, for appellee.

Mr. James F. Reilly, Washington, D. C., with whom Mr. Kevin P. Charles, Washington, D. C., was on the brief in opposition to the motion, for appellants.

Mr. G. William Hammer, Falls Church, Va., entered an appearance for appellant in No. 17696.

Before PRETTYMAN, Senior Circuit Judge, and FAHY and BURGER, Circuit Judges.

PRETTYMAN, Senior Circuit Judge.

The United States brought a civil action for the taking of real property under power of eminent domain. The authority for the taking was recited as the condemnation statutes of 1888, 1929 and 1949 "and the Act of July 27, 1962 (Public Law 87–552, 76 Stat. 222)." The complaint said, "The use for which said land is taken is as a site for construction of an addition to the headquarters building of the International Monetary Fund." A declaration of taking was executed by the proper official on behalf of the United States, and $406,300 was deposited in the registry of the court as the estimated just compensation. The United States filed a motion for an order for delivery of possession. The fee owners and lessees of the property filed answers and also filed motions to dismiss the complaint and to deny the motion of the Government for possession. The District Court denied both motions of the owners and lessees. The court then ordered that all persons in possession or control of the property surrender possession on or before May 1, 1963.

The defendants (fee owners and lessees) contended and continue to contend that the taking is not for a public purpose and is therefore illegal.

The International Monetary Fund is a permanent intergovernmental organization designed to promote certain policies in the area of foreign exchange. It presently has 76 members (all nations, of course), and the fund amounts to approximately fifteen billion dollars. The Congress in July, 1962, adopted a joint resolution (now Public Law 87–552) which provided:

"[T]he Administrator of General Services is hereby authorized, on the basis of full reimbursement by the International Monetary Fund, (1) to acquire, by purchase, condemnation, or otherwise, the land in the northwest section of the District of Columbia known as lots I and R in square 141, together with any buildings and improvements thereon, and (2) to convey the property so acquired to the International Monetary Fund for use in expanding the principal office of the Fund."

The resolution as adopted was approved July 27, 1962. The property mentioned (lots I and R in square 141) is the property here involved. The United States is avowedly proceeding under this act of the Congress.

The owners and lessees appealed to this court from the judgment of the District Court granting the United States possession of the property, and also from the judgment in which that court held the taking to be for a public purpose and a lawful exercise of the right of eminent domain. The United States moved to dismiss the appeal, upon the ground that the judgments appealed from were not final orders or judgments. That motion is now before us.

The Government rests upon the decision and opinion of the Supreme Court in Catlin v. United States, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911 (1945). It contends that the Court there held that the right of an owner to appeal from the taking of property does not lie until the final judgment in the proceeding has been rendered. Such final judgment is not rendered until the just compensation has been determined and judgment for that amount included in the order. The Court held in that case that the property owners could not appeal from the judgment of taking or transfer of possession. The Court said that under the War Purposes Act of 1917 the rule was the same as it has been historically in condemnation matters and that in the taking, prior to the payment of just compensation, the United States acquired a defeasible title. The Government concedes here that under the judgment of the District Court the title which the

United States will acquire is a defeasible title, and urges that in an appeal from a judgment awarding just compensation the property owners could present their contentions respecting the invalidity of the transfer of title, and that if successful in that contention they could require a return of the property.

This property includes land and a hotel building.

The International Monetary Fund was established by Articles of Agreement between the United States and other powers, known as the Bretton Woods Agreement, effective December 27, 1945, 60 Stat. 1401 et seq. The Agreement provides (Art. IX, Sec. 3, Id. at 1413):

> "The Fund, its property and its assets, wherever located and by whomsoever held, shall enjoy immunity from every form of judicial process except to the extent that it expressly waives its immunity for the purpose of any proceedings or by the terms of any contract."

The Fund has not waived its immunity for the purpose of the present proceeding, nor has its immunity been removed by the terms of any contract.

■ The Government says that upon the effective date of the judgments of the District Court it will transfer the title to the property and its possession to the Monetary Fund. The statute under which it would acquire the property would require it to do so. Therefore immediately after transfer of the title to the United States that title will be transferred to an entity which is immune from all judicial process of the United States. We think this circumstance takes this case out of the doctrine of the Catlin case and makes these judgments of the District Court final judgments.

In the Catlin case the Court was concerned with the condemnation of a piece of land which was being taken by the United States and, so far as the record shows, was to be kept by it and used for war purposes. The Court pointed out that under the judgment on the declaration of taking the United States acquired a defeasible title and the right of the property owners to contest the validity of the transfer of title remained available to them until final judgment awarding just compensation. The Court was quite emphatic in its position that the War Purposes Act, there under consideration, did not destroy any rights which the property owners theretofore had had, and that the owners' right was to have issues concerning the validity of the transfer determined in the final judgment dispositive of the whole cause. It said that the language of the Act was not wholly free from doubt but that no necessary inconsistency would appear "if the statute is construed to confer upon the Government, upon occurrence of the events specified, only a defeasible title in cases where an issue concerning the validity of the taking arises." 324 U.S. at 241, 65 S.Ct. at 637. The Court said: "The alternative construction, that title passes irrevocably, leaving the owner no opportunity to question the taking's validity or one for which the only remedy would be to accept the compensation which would be just if the taking were valid, would raise serious question concerning the statute's validity." Ibid. The Court further pointed out that the provision of the statute requiring an opinion of the Attorney General that all persons having an interest in the property would be bound by the final judgment therein seems clearly to contemplate that title is not indefeasibly vested in the United States merely by following the administrative procedure.

■ In the case before us the facts are that the transfer of the title to the United States would be indefeasible, for the simple reason that, acting pursuant to its congressional authority, the United States would immediately place this property beyond the power of judicial process. As a factual matter the property owners would be left with no means by which to defeat, or to test, the validity of the transfer of the title. We are of opinion that the United States cannot by a judgment on the declaration of taking defeat the right of a property

owner to contest in a judicial proceeding the validity of the taking.

The Government argues that the proceeding, being a condemnation action, is *in rem*, and that the court, having acquired jurisdiction over the property, never loses that jurisdiction. But the statute in this particular case (Pub.L. No. 87–552) authorizes the Administrator to acquire and to convey this property to an entity which is not only itself immune from process but whose property is also immune. Unless either that statute or that paragraph in the Bretton Woods Agreement is invalid, this property, as well as its prospective owner, would pass beyond the jurisdiction of this court the instant it passed to the Fund.

It seems to us that no interest would be served by an unnecessary prolongation of litigation over the validity of this taking. Everybody's interests (the owners', the lessees', the Fund's, and the United States') would be best served, it seems to us, by an expeditious and uncomplicated resolution of this basic issue. Certainly efforts to deny the owners' right to test the validity of the taking would result in indefinite contesting and in doubtful title. On the other hand, a prompt decision on the question of validity would either permit the venture to go forward without ancillary complication or nullify the project entirely.

The foregoing leads us to conclude that we should order expedited consideration of this appeal and that in the meantime the effect of the judgments of the District Court should be stayed. Briefs will be directed to be filed within such time as will permit argument of the cause not later than the first week in June. Appellants shall forthwith arrange for the transmission of the record to the clerk of this court. Typewritten briefs may be filed initially. The joint appendix may be prepared and filed immediately after appellee's brief is filed. It will be

So ordered.

FAHY, Circuit Judge, did not participate in the hearing or decision on this motion.