**UNITED STATES of America,
Appellant,**

v.

**80.5 ACRES OF LAND, MORE OR LESS,
IN the COUNTY OF SHASTA, STATE
OF CALIFORNIA, Walter W. McGuire,
et al., Appellees.**

No. 25093.

United States Court of Appeals,
Ninth Circuit.

Sept. 29, 1971.

Rehearing Denied Nov. 11, 1971.

Jacques B. Gelin (argued), Dept. of Justice, Shiro Kashiwa, Asst. Atty. Gen., Washington, D. C., Rodney H. Hamblin, Special Asst. U. S. Atty., San Francisco, Cal., for appellant.

Franklin A. Dill (argued), San Francisco, Cal., William B. Boone, Santa Rosa, Cal., for appellees.

Before BROWNING and CHOY, Circuit Judges, and VON DER HEYDT,* District Judge.

VON DER HEYDT, District Judge:

In this condemnation proceeding the United States appeals from the district

* Honorable James A. von der Heydt, United States District Judge for the District of Alaska, sitting by designation.

court's order granting the landowners' motion for summary judgment and dismissing the Government's complaint. Jurisdiction exists in this court pursuant to 28 U.S.C. § 1291.

The facts are as follows. During the Eisenhower Administration, the Department of Interior prepared plans for the Trinity River Project. This project, at that time, did not include appellees' land, a tract of 80.5 acres located in Jackson County, California. Because of the Government's representations (statements and maps excluded this area) appellees acquired the land and made improvements thereon. Meanwhile, the Department of Interior under the Kennedy Administration pursued reevaluation in light of the pressing demands upon existing area and determined that the land was needed.

The United States, appellant herein, on April 13, 1964, filed its complaint and declaration of taking to condemn the 80.5 acre tract. This proceeding was initiated pursuant to Section 3 of the Trinity River Project Act of 1955, 69 Stat. 720. The Trinity River Project Act of 1955 covered construction of the Trinity River Division of the Central Valley Dam and Reservoir Project. The Act provides in its first section:

"That, for the principal purpose of increasing the supply of water available for irrigation and other beneficial uses in the Central Valley of California, the Secretary of the Interior, acting pursuant to the Federal reclamation laws * * *, is authorized to construct, operate, and maintain, as an addition to and an integral part of the Central Valley project, California, the Trinity River division consisting of a major storage reservoir on the Trinity River with a capacity of two million five hundred thousand acre-feet, a conveyance system consisting of tunnels, dams, and appurtenant works to transport Trinity River water to the Sacramento River and provide, by means of storage as necessary, such control and conservation of Clear Creek flows as the Secretary determines proper to carry out the purposes of this Act, hydroelectric powerplants * * *, and such electric transmission facilities as may be required to deliver the output of said powerplants to other facilities of the Central Valley Project and to furnish energy in Trinity County. * * *"

Section 3 provides:

"The Secretary is authorized to investigate, plan, construct, operate, and maintain minimum basic facilities for access to, and for the maintenance of public health and safety and the protection of public property on, lands withdrawn or acquired for the development of the Trinity River division, to conserve the scenery and the natural, historic, and archeologic objects, and to provide for public use and enjoyment of the same and of the water areas created by these developments by such means as are consistent with their primary purposes. The Secretary is authorized to withdraw from entry or other disposition under the public land laws such public lands as are necessary for the construction, operation, and maintenance of said minimum basic facilities and for the other purposes specified in this section and to dispose of such lands to Federal, State, and local governmental agencies * * *. The Secretary is further authorized to investigate the need for acquiring other lands for said purposes and to report thereon to the Committees on Interior and Insular Affairs of the Senate and House of Representatives, but no lands shall be acquired solely for any of these purposes other than access to project lands and the maintenance of public health and safety and the protection of public property thereon without further authorization by the Congress. * * *"

The landowner appellees answered the Government's complaint, alleging, first, that the 1955 Act did not authorize the taking of the 80.5 acre tract, second, that there was no necessity for such taking, and third, that the acts of the Unit-

ed States through its agents were fraudulent, arbitrary, and capricious. The district court granted the Government's motion to strike the second defense.

In light of the reevaluation to take the land by the Interior Department and the location of the property (the tract not fronting the reservoir) appellees propounded numerous interrogatories aimed at disclosure of the purpose for which the property had been taken. After extensive and time consuming argument upon the question of the necessity of the Government's answers to the interrogatories, and appropriate rulings by the district judge, appellees, on December 3, 1968, filed a motion for summary judgment.[1] That motion was based on the assertion that the 80.5 acres were to be used for public recreational purposes and as such the United States had no authority to condemn and acquire appellees' land, and that the Trinity River Act expressly prohibited the acquisition of the 80.5 acre tract by the Government. Appellees further contended that the actions of the Secretary of the Interior were arbitrary, capricious and in bad faith. The United States filed a crossmotion for partial summary judgment on December 12, 1968, alleging that the condemnation was authorized as the land condemned would provide for the maintenance of minimum basic facilities, access to and for maintenance of public health, and for the safety and the protection of public property.

In reaching its decision as to the Secretary's authority to condemn appellees' land for the reason that it was required for minimum basic facilities, the district court considered Section 3 of the Trinity River Act. The court found the first sentence of the Act to enumerate five purposes for which minimum basic facilities could be constructed and maintained by the Secretary of the Interior. They are (1) to provide access to lands withdrawn or acquired for the development of the Trinity River Project, (2) to provide for the maintenance of public health and safety on lands withdrawn or acquired for the development of the Trinity River Project, (3) to provide for the protection of public property on lands withdrawn or acquired for the development of the Trinity River Project, (4) to conserve the scenery and the natural historic and archeologic objects on lands withdrawn or acquired for the development of the project area and on water areas created by the developments, and (5) to provide for the public use and enjoyment on lands withdrawn or acquired for the development of the project area and on water areas created by the developments.

Sentence two of the Act permitted the Secretary to withdraw such public lands as are necessary for any of the five purposes. The third sentence, however, limited the Secretary's authorization in that land could not be acquired solely for purposes 4 and 5 unless the Congress further authorized such acquisition. Section 3 stated, "* * * no lands shall be acquired solely for any of these purposes other than access to project lands and the maintenance of public health and safety and the protection of public property. * * *" Thus, in order for lands to be acquired by the United States for use to conserve the scenery and the natural, historic and archeologic objects of the project lands and water areas, and to provide for public use and enjoyment of the project lands and water areas, Congress must enact further authorization, or purposes 4 and 5 must be ancillary to the taking of the land under purposes 1, 2, or 3.

Appellees contended that the Government was taking their land solely for recreational purposes and therefore the taking was not authorized by the statute. The Government asserted that appellees' lands were acquired to provide

---

1. The case before the district court required substantial litigation time. The complaint was filed on April 13, 1964; summary judgment from which this appeal was taken was entered on July 3, 1969.

access and maintenance of health and safety to project lands in connection with a recreational use.

After careful review of the exhibits consisting largely of letters from Interior Department officials to United States Senators, Congressmen, and other defendants, the district court found that appellees' land was taken " * * * solely for the purpose of furthering the recreational use of the project." Further the court stated that the 80.5 acres was specifically taken, " * * * to provide access for the visiting public to Fisherman's Cove, where public improvements were planned."

The district court restricted purposes, 1 (to provide access to project lands) and, 2 (to provide for the maintenance of public health and safety on project lands) solely to the project's objective of reclamation, stating that the primary purpose of the project was to create the Whiskeytown Reservoir. Thus, the district court concluded that the United States could not take land to provide access for public recreation. In other words, the district court found that the only access to the project authorized was for the purpose of building and maintaining water reclamation facilities.

We conclude the findings of the district court are clearly erroneous in light of the wording of the Act, and must reverse.

The landowners assert that they do not question the power of Congress to authorize the acquisition of land. Further, they do not question the necessity of the 80.5 acres to the Trinity River Project. Rather, they contend that the issue before this court is whether or not Congress *authorized* the Secretary of Interior under the Trinity River Project Act of 1955, 69 Stat. 720 to take by condemnation appellees' land.

■ It is uncontroverted that the courts are not vested with authority judicially to review the power of Congress to authorize acquisition of land. Once an administrative agency designated by Congress has been delegated authority to take lands for a public use, the courts have no jurisdiction to review action of that administrative agency in its determination as to the parcels of land that are or are not necessary to the project. The necessity of taking or appropriating private property for public use is legislative in nature and one over which the courts lack jurisdiction. Rindge Co. v. Los Angeles, 262 U.S. 700, 709, 43 S.Ct. 689, 67 L.Ed. 1186 (1923). *See e. g.,* United States ex rel. Tennessee Valley Authority v. Welch, 327 U.S. 546, 552, 66 S.Ct. 715, 90 L.Ed. 843 (1946); Shoemaker v. United States, 147 U.S. 282, 298, 13 S.Ct. 361, 37 L.Ed. 170 (1893); United States v. 2,606.84 Acres of Land in Tarrant Co., Texas, 432 F.2d 1286, 1289 (5th Cir. 1970), cert. den., 402 U.S. 916, 91 S.Ct. 1368, 28 L.Ed.2d 658 (1970).

■ We note the criterion stated in Berman v. Parker, 348 U.S. 26, 35, 75 S.Ct. 98, 99 L.Ed. 27 (1954), that the landowner's standard of what is needed to fulfill the public purpose is not to be substituted for the standard prescribed by Congress. Community redevelopment programs require broad condemnation powers, and must not be forced to piecemeal, lot by lot, building by building, development. The Supreme Court further stated. "It is not for the courts to oversee the choice of the boundary lines nor to sit in review on the size of a particular project area. Once the question of the public purpose has been decided, the amount and character of land to be taken for the project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch." 348 U.S. at 35–36, 75 S.Ct. at 104.

■ The district court determined that Section 3 of the Act authorized the taking of land by the Secretary solely for three purposes, to maintain minimum basic facilities for (1) access to project lands, (2) the maintenance of public health and safety on project lands, and (3) the protection of public property on project lands. Further, private lands could not be taken (4) to con-

serve the scenery and the natural, historic, and archeologic objects on project lands or developed water areas, or (5) to provide for the public use and enjoyment on project lands or developed water areas, unless taken in conjunction with purposes (1), (2) or (3). We agree with that determination. The Act specifically stated that lands should not be acquired solely for purposes other than "* * * access to project lands and the maintenance of public health and safety and the protection of public property thereon without further authorization by the Congress. * * *" The statute is specific in that regard. Lands were not to be taken solely for recreational purposes.

■ The Government uniformly has asserted that appellees' land is to be used for maintenance of minimum basic facilities for access to and for public health and safety and the protection of public property. This assertion constitutes a recitation of the Trinity River Act. The Government did contend, however, that appellees' land was to provide access for the visiting public to Fisherman's Cove and protection to the recreational facilities which were to be developed.[2] The district court agreed, finding that appellees' land was to be used for access to the Fisherman's Cove area.

Appellees consistently have urged that the 80.5 acres were taken solely for recreational purposes, and that such taking was not authorized by the statute. The courts cannot "second guess" the government's asserted purposes. The United States Court of Appeals for the Fifth Circuit, United States v. 2,606.84 Acres of Land in Tarrant County, Texas, 432 F.2d 1286, 1290 (5th Cir. 1970) stated, "The district court attempted to take the present case out of this rule of non-justiciability by characterizing the question as one of purpose rather than necessity. Instead of finding outright that the land was not needed for the stated purpose,

the [district] court concluded that the purpose stated by the Secretary of the Army in the declaration of taking was not the real purpose for the taking and that the real purpose, recreation, was unauthorized. We do not think this slight change in terminology is sufficient to convert what is essentially a legislative determination into a judicial question. United States v. Mischke, 8 Cir. 1961, 285 F.2d 628." The record reflects adequate evidence that the 80.5 acres in question here are needed for proper purposes under the Act. A contrary conclusion would in essence "convert what is essentially a legislative determination into a judicial question."

We conclude that the Secretary of Interior was authorized under Section 3 of the Trinity River Project Act of 1955, 69 Stat. 720, to condemn appellees' land for purposes of access to the project area.

The cause is reversed and remanded to the district court for proceedings consistent with this opinion and for a determination of just compensation.

---

2. Letter to Senator Thomas Kuchel from Acting Department Solicitor, Edward Weinberg, dated October 22, 1964.