**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**58.16 ACRES OF LAND, MORE OR LESS, Situated IN CLINTON COUNTY, STATE OF ILLINOIS, and George Cooley, et al., and unknown owners, Defendants-Appellants.**

**No. 72–1220.**

United States Court of Appeals,
Seventh Circuit.

Argued March 1, 1973.

Decided April 13, 1973.

Rehearing Denied June 14, 1973.

Paul P. Waller, Jr., Belleville, Ill., for defendants-appellants.

Kent Frizzell, Asst. Atty. Gen., Glen R. Goodsell, Atty., Dept. of Justice, Washington, D. C., Henry A. Schwarz, U. S. Atty., E. St. Louis, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, FAIRCHILD, Circuit Judge, and CAMPBELL, Senior District Judge.[1]

SWYGERT, Chief Judge.

This appeal concerns the extent a landowner may question the taking of his property by the federal government in the exercise of its power of eminent domain and when that question may be raised, what procedural rights are afforded the landowner, and finally, the appealability of an order denying a challenge of the United States' right to take when that order precedes a determination of just compensation.

On June 30, 1971 the United States filed a complaint to acquire certain real estate owned by George Cooley and his wife, Elizabeth. The complaint alleged that the projected acquisition was requested by the Secretary of the Army, in conformity with the Acts of Congress, 46 Stat. 1421, 40 U.S.C. § 258a, being the Declaration of Taking Act; and under authority of 25 Stat. 94, 33 U.S.C. § 591, River and Harbor Improvement Act and 39 Stat. 950, 33 U.S.C. § 701, which authorize the acquisition of land for flood control; Public Law 75–761 which authorizes Carlyle Reservoir Project; and Public Law 91–439 which appropriated funds for such purposes. The complaint further alleged that the public uses for which the land is to be taken are that it is necessary to

1. Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

adequately provide for flood control downstream of the Carlyle Reservoir Dam, for reduction of flood crests in the lower and middle Mississippi River, and for other uses incidental thereto.

The land in question is a 58.16 acre tract (Tract 512–3) located in Clinton County, Illinois. It is farmland on which the Cooleys' home and miscellaneous farm buildings are located. The land has a frontage on the Carlyle Reservoir, which was constructed during the years 1964 through 1966 by damming the Kaskaskia River. Prior to the construction the Cooleys had sold to the United States certain lands adjacent to Tract 512–3 and also had granted a floodstage easement to the government on the tract.

On the same day the complaint was filed, the Secretary of the Army filed in the district court a declaration of taking pursuant to 40 U.S.C. § 258a, and the court thereupon ordered the landowners to surrender possession of the lands to the United States on or before January 1, 1972. Both a copy of the order and a notice of condemnation [2] were thereafter served upon the Cooleys. A week later the landowners filed an answer to the complaint, specifically challenging the Secretary's allegation that the land was being taken for a public use.[3] Subsequently, on October 12, 1971, the Cooleys filed a motion to vacate or modify the order for delivery of possession, asserting that they had a valid defense to the condemnation proceeding in that the Secretary's action was "arbitrary, discriminatory, capricious, vindicative and in bad faith." An affidavit, signed by George F. Cooley, was filed in support of the motion. The affiant asserted that after the Carlyle Reservoir Dam had been completed the filled reservoir began causing erosion of the Cooley property because of "wave action" which was due to the failure to maintain proper water levels; that the Cooleys had complained to the Army Corps of Engineers frequently during the years 1968 through 1970, but that no action had been taken to repair the damage or to prevent further erosion; that the Corps finally responded to the complaints in January 1971 by advising the Cooleys that the cost to protect their homestead exceeded its fair market value and therefore the Corps had elected to condemn the property. The affiant further alleged that the Corps intended to condemn only his land even though other tracts adjacent or near his property had similar elevations along the shoreline.

The Government answered the motion, denying that it acted in bad faith or arbitrarily and capriciously. Thereafter, the district court, without taking evidence or conducting a hearing denied the motion to vacate or modify the possession decree. The judge's memorandum accompanying the order stated:

> The Court has considered the entire matter and finds that the United States v. 80.5 Acres of Land, etc., Co. of Shasta, Cal., 448 F.2d 980 (9th Cir., 1971), is controlling here. The Court finds that defendants' motion to

2. The notice of condemnation read in part:
 You Are Further Notified that you may serve upon the plaintiff's attorney, at the address herein designated, an answer within twenty days after service of this notice upon you, and that the failure so to serve an answer constitutes a consent to the taking and to the authority of the Court to proceed to hear the action and to fix the compensation.

3. The answer read in part:
 That these defendants deny that said land is taken for any public use, and specifically charge the government with having resorted to condemnation proceedings rather than to repair damage done to said property by erosion and to make necessary repairs to the shore line so that future erosion could be prevented, contrary to the spirit and purpose of the Condemnation Act enacted by Congress.
 "That the defendants' land is the only land sought to be condemned, and tracts intervene between defendants' tract and the Carlyle Reservoir Dam, and the acquisition of defendants' land could in no way further the avowed purpose of providing flood control downstream of the Carlyle Reservoir Dam or for reduction of flood crests in the lower and middle Mississippi River.

amend this Court's prior order is without merit and will, therefore, be and the same is hereby denied.

This appeal followed, and the possession order was stayed during the pendency of the appeal.

## I

 The order from which this appeal is taken is unclear. By referring to United States v. 80.5 Acres of Land, etc., 448 F.2d 980 (9th Cir. 1971), the district judge apparently took the position that the election of the Corps of Engineers to condemn the Cooleys' land was not judicially reviewable. The judge went on to say, however, that the motion to vacate the order for possession was "without merit," which might indicate that he found against the Cooleys on their claim of bad faith, arbitrariness, and capriciousness on the part of the Corps of Engineers; on the other hand, this could mean that he found the motion had no merit because it did not present a justiciable issue.

With respect to the extent of judicial review over the right of eminent domain, courts have a fundamental but narrow function. The Supreme Court in Shoemaker v. United States, 147 U.S. 282, 298, 13 S.Ct. 361, 37 L.Ed. 170 (1893), delineated that function thus:

> The adjudicated cases likewise establish the proposition that while the courts have power to determine whether the use for which private property is authorized by the legislature to be taken is in fact a public use, yet, if this question is decided in the affirmative, the judicial function is exhausted; that the extent to which such property shall be taken for such use rests wholly in the legislative discretion, subject only to the restraint that just compensation must be made.

This articulation was reiterated in Berman v. Parker, 348 U.S. 26, 35, 75 S.Ct. 98, 101, 99 L.Ed. 27 (1954):

> It is not for the courts to oversee the choice of the boundary line nor to sit in review on the size of a particular project area. Once the question of the public purpose has been decided, the amount and character of land to be taken for the project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch.

The determination of whether the taking of private property is for a public use may appropriately and materially be aided by exploring the good faith and rationality of the governmental body in exercising its power of eminent domain. Thus in United States v. Carmack, 329 U.S. 230, 243, 67 S.Ct. 252, 258, 91 L.Ed. 209 (1946), the Court said:

> In this case, it is unnecessary to determine whether or not this selection could have been set aside by the courts as unauthorized by Congress if the designated officials had acted in bad faith or so "capriciously and arbitrarily" that their action was without adequate determining principle or was unreasoned.

Many lower federal courts have voiced the same proposition. This court in United States v. Meyer, 113 F.2d 387, 392 (7th Cir.), cert. denied, 311 U.S. 706, 61 S.Ct. 174, 85 L.Ed. 459 (1940), said:

> Defendants insist that a fee simple title was not necessary to accomplish the purposes contemplated by the legislation. But the power to decide whether such a title was needed is, by the legislation, conferred upon the Secretary and, in the absence of bad faith or abuse of discretion, such determination is not subject to judicial review. . . .
>
> Determination of the extent, amount or title of property to be taken, by an Administrative Department, is, in the absence of bad faith, final. . . . The decision as to such questions rests wholly in legislative discretion, subject only to the restraints that just compensation must be paid and the determination made in good faith.

The Ninth Circuit in Southern Pacific Land Co. v. United States, 367 F.2d 161, 162 (9th Cir. 1966), cert. denied, 386 U. S. 1030, 87 S.Ct. 1478, 18 L.Ed.2d 592 (1967) stated:

But the Supreme Court itself has declined to rule out the possibility of judicial review where the administrative decision to condemn a particular property or property interest is alleged to be arbitrary, capricious, or in bad faith. United States v. Carmack, 329 U.S. 230, 243–244, 67 S.Ct. 252, 91 L.Ed. 209 (1946). And various courts of appeal, including this one, have said that an exception to judicial non-reviewability exists in such circumstances. Simmonds v. United States, 199 F.2d 305, 306–307 (9th Cir. 1952); United States v. 64.88 Acres of Land, 244 F.2d 534, 536 (3rd Cir. 1957); United States v. Certain Real Estate, 217 F.2d 920, 926–927 (6th Cir. 1954); United States v. Certain Parcels of Land, 215 F.2d 140, 147 (3rd Cir. 1954); and United States v. Meyer, 113 F.2d 387, 392 (7th Cir. 1940). See also Wilson v. United States, 350 F.2d 901, 906–907 (10th Cir. 1965); United States v. 91.69 Acres of Land, 334 F.2d 229, 231 (4th Cir. 1964); and United States v. State of New York, 160 F.2d 479, 480 (2nd Cir. 1947).

The district court's reliance on United States v. 80.5 Acres of Land was misplaced. In that case a federal district court entered summary judgment for the landowners, ruling that the real purpose of the taking was for public recreational use and as such the United States had no statutory authority to condemn the lands. The court of appeals reversed, stating, in effect, that when the government's asserted purpose—other than recreational—came within the statutory authority and the evidence was adequate to show that the lands in question were needed for "proper purposes under the Act," the district court had no authority to review the action of the governmental agency. Thus, upon analysis, that case is not inconsistent with those heretofore cited which hold that the courts are empowered to determine if the taking of private property is for a public use.

In sum, questions of bad faith, arbitrariness, and capriciousness, all bearing upon the determination of public use, having been raised by the Cooleys, the district court was required to resolve those questions.

II

Rule 71A(e) of the Federal Rules of Civil Procedure provides in part: "If a defendant has any objection or defense to the taking of his property, he shall serve his answer within 20 days after the service of notice upon him. The answer shall identify the property in which he claims to have an interest, state the nature and extent of the interest claimed, and state all his objections and defenses to the taking of his property." Rule 71A(h) which deals with the manner and forum in which the issue of just compensation shall be determined provides in part: "Trial of all issues shall otherwise be by the court." Thus the rule contemplates that the court in which the condemnation proceeding is filed shall ordinarily, in advance of determining just compensation, decide whether the governmental agency was authorized to take the lands sought to be condemned. In the instant case, no hearing having been afforded on the issue presented by their answer to the complaint, the landowners sought by their motion to vacate and amend the order of possession to present the issue in a forceful and concrete manner. The effort was rebuffed by the order appealed from which this appeal is taken.

There can be no doubt in our minds that the landowners under these circumstances were entitled to a hearing on their objections to the taking prior to their being required to vacate their homestead and that the hearing need not or should not have been deferred until a determination of just compensation. The fifth amendment's mandate that "No person shall be . . . deprived

of . . . property, without due process of law; nor shall private property be taken for public use, without just compensation" required no less.

### III

The Government contends that the denial of the Cooleys' challenge to the taking of their property and of the order for delivery of possession is not an appealable order, citing Catlin v. United States, 324 U.S. 229, 65 S.Ct. 631, 89 L. Ed. 911 (1945). That case, on its face, would appear to support the Government's position. There landowners, contending that the taking was unauthorized by law, attempted an appeal from a denial of a motion to vacate an order entered upon a declaration of taking filed pursuant to the Declaration of Taking Act of 1931, 40 U.S.C. §§ 258a–258e. This court held that the order was not a final decision within 28 U.S.C. § 1291. The Supreme Court affirmed. Mr. Justice Rutledge, who delivered the opinion, wrote:

> Their right to appeal rests upon § 128 of the Judicial Code. This limits review to "final decisions" in the District Court. A "final decision" generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. St. Louis, I. M. & S. R. Co. v. Southern Express Co., 108 U.S. 24, 28 [2 S.Ct. 6, 8, 27 L.Ed. 638]. Hence, ordinarily in condemnation proceedings appellate review may be had only upon an order or judgment disposing of the whole case, and adjudicating all rights, including ownership and just compensation, as well as the right to take the property. This has been the repeated holding of decisions here. 324 U.S. at 233, 65 S.Ct. at 633.
>
> * * * * * *
>
> Accordingly, in our opinion the right of the owner to challenge the validity of the taking, for nonconformity with the prescribed statutory purposes, was not destroyed by the 1931 act. . . . No new right of sepa-

rate appeal was given. The preexisting right of appeal, including appeal on grounds relating to validity of the taking, remained in force to be exercised when and only when final judgment, disposing of the cause in its entirety, has been rendered. 324 U.S. at 243, 65 S.Ct. at 638.

The Catlin holding, however, is not as dogmatic as it would appear. The Court observed that "ordinarily" the review in condemnation proceedings must await an order or judgment "disposing of the whole case"; thus the Court must have envisioned that there could be circumstances—not ordinary—in which an appeal, interlocutory in character, is permissible. Such a circumstance presented itself in Loughran v. United States, 115 U.S.App.D.C. 196, 317 F.2d 896 (1963). In that case the authorizing statute provided that the land to be acquired was to be conveyed to the International Monetary Fund, an intergovernmental organization. The owners of the property sought to be condemned challenged the declaration of taking, contending that the acquisition was not for a public use. The district court refused to entertain the challenge, and the owners appealed. The District of Columbia Circuit allowed the appeal, ruling that to dismiss the appeal would permit the property to pass "beyond the jurisdiction" of the court "the instant it passed to the Fund." The court had observed earlier that the International Monetary Fund is an "entity which is not only itself immune from process but whose property is also immune." 317 F.2d at 899.

In interpreting 28 U.S.C. § 1291 the Supreme Court on more than one occasion has recognized that a "twilight zone" may exist which will permit appellate review of orders and judgments, interlocutory in character, that do not strictly fall within the exceptions set forth in 28 U.S.C. § 1292. In Gillespie v. U. S. Steel Corp., 379 U.S. 148, 85 S. Ct. 308, 13 L.Ed.2d 199 (1946), the Supreme Court affirmed the Sixth Circuit, which had reviewed the merits of an in-

terlocutory order entered by the district court, striking certain remedies advanced by a deceased seaman's mother who claimed damages resulting from his death in a dockside accident.[4] There Mr. Justice Black, speaking for the Court, wrote:

> In this Court respondent joins petitioner in urging us to hold that 28 U.S.C. § 1291 (1958 ed.) does not require us to dismiss this case and that we can and should decide the validity of the District Court's order to strike. We agree. Under § 1291 an appeal may be taken from any "final" order of a district court. But as this Court often has pointed out, a decision "final" within the meaning of § 1291 does not necessarily mean the last order possible to be made in a case. Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 545 [69 S.Ct. 1221, 1225, 93 L.Ed. 1528.] And our cases long have recognized that whether a ruling is "final" within the meaning of § 1291 is frequently so close a question that decision of that issue either way can be supported with equally forceful arguments, and that it is impossible to devise a formula to resolve all marginal cases coming within what might well be called the "twilight zone" of finality. Because of this difficulty this Court has held that the requirement of finality is to be given a "practical rather than a technical construction." 379 U.S. at 152, 85 S.Ct. at 311.

At a later point Justice Black, after referring to United States v. General Motors Corp., 323 U.S. 373, 377, 65 S.Ct. 357, 89 L.Ed. 311 (1945), stated, "this Court contrary to its usual practice reviewed a trial court's refusal to permit proof of certain items of damages in a case not yet fully tried, because the ruling was 'fundamental to the further conduct of the case.'" 379 U.S. at 153, 85 S.Ct. at 311.

■ We think this pragmatic approach should be applied to the instant situation. If the district judge had held a hearing and squarely ruled on the landowners' objections to the taking, we might have a different case. But it is fair to say, we believe, that he took the position that the court could not entertain the challenge to the taking. That ruling was "fundamental to the further conduct of the case" because it left compensation as the only issue to be determined. Our view is supported by a recent Second Circuit case, United States v. Certain Lands in the Borough of Manhattan, 332 F.2d 679 (2d Cir. 1964).

When stripped of the procedural trappings that surround this appeal, we think that, in a realistic sense, the appeal is in the nature of a mandamus. The district court held it had no power to entertain the challenge asserted by the landowners. We hold to the contrary, and, in the interest of orderly judicial procedure and to conserve time, remand the case to the district court for the purpose of conducting proceedings consistent with this opinion.

■ Under the circumstances of this case, where the Government condemned the land in order to save costs and has no immediate need for possession of the property, we believe that it would be appropriate for the district court to continue its stay of the order of possession pending final judgment. It is so directed.

---

4. The district court failed to make the findings necessary for an interlocutory appeal under 28 U.S.C. § 1292(b).