514 F.2d 1350
 169 U.S.App.D.C. 109
 WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, a body corporate
v.
ONE PARCEL OF LAND IN the DISTRICT OF COLUMBIA VESTRY OF
ROCK CREEK PARISH, a corporation organized and
existing under the Maryland Vestry Act
of 1798, et al., Appellants.
 No. 74-2022.
 United States Court of Appeals,
District of Columbia Circuit.
 June 23, 1975.
 
 Ernest F. Henry, Washington, D. C., for appellants.
 Wallace H. Johnson, Asst. Atty. Gen., and Edmund B. Clark, Atty., Dept. of Justice, were on the brief for appellee.
 Before BAZELON, Chief Judge, and TAMM and ROBB, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiff-appellee Washington Metropolitan Area Transit Authority (Metro) commenced this action in the district court to condemn a property interest in Rock Creek Cemetery, and moved for possession of that interest. Defendants-appellants Vestry of Rock Creek Parish and Ernest F. Henry, as interested parties, answered Metro's complaint, counterclaimed for declaratory and injunctive relief, and opposed Metro's motion for possession. After a hearing, the district court ordered that possession be surrendered. We affirm the district court's order.
 
 
 2
 It is important to understand what is and is not involved in this case. Metro is presently in various stages of constructing a comprehensive, rapid transit rail system for the Washington metropolitan area. Public hearings revealed that one of Metro's proposed routes would require the destruction of seventy homes in a stable residential neighborhood, a fact that created significant opposition. Consequently, Metro is considering several alternative routes to avoid the destruction of these homes, one of which involves the construction of a 2500 foot tunnel under Rock Creek Cemetery. Preliminarily, Metro must determine the composition of the subsoil of the relevant portion of the cemetery to ascertain the feasibility of the project, to complete an environmental impact analysis of the proposed alternatives, and to prepare for public hearings. In order to examine the composition of the subsoil, Metro sought to condemn "a temporary and assignable right of use and occupancy, together with the right of ingress and egress, for a period of thirty (30) days, . . . for the purpose of entering upon said parcel with appropriate drilling equipment for the purpose of making eight (8) test borings, each four (4) inches in diameter." Thus, although questions concerning Metro's authority to build a tunnel under the cemetery are lurking in the background, they are not presently before this court. The ultimate issue before us is only whether Metro may enter the cemetery for the limited purpose of making eight test borings.
 
 
 3
 Initially, Metro suggests that this court lacks jurisdiction. 16 D.C.Code § 1365 provides in part:
 
 
 4
 A party aggrieved by a final judgment in a proceeding pursuant to this subchapter may appeal therefrom to the United States Court of Appeals for the District of Columbia Circuit.
 
 
 5
 It is true that "ordinarily in condemnation proceedings appellate review may be had only upon an order or judgment disposing of the whole case, and adjudicating all rights, including ownership and just compensation, as well as the right to take the property." Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). It is not true, however, that no order issued in a condemnation case can be an appealable order before all the issues raised in the condemnation proceeding, including just compensation, have been adjudicated. Rather, an order of possession is final and subject to review if it operates to defeat the right of the property owner to challenge the validity of the taking in the condemnation proceeding. See Loughran v. United States, 115 U.S.App.D.C. 196, 317 F.2d 896 (1963); United States v. 58.16 Acres of land, 478 F.2d 1055 (7th Cir. 1973); United States v. Certain Land in the Borough of Manhattan, 332 F.2d 679 (2d Cir. 1964). The possession order in this case is such an order. Had this court not stayed that order Metro would long since have taken possession and completed its borings, thereby defeating any remedy the Cemetery may have. Consequently, the order is subject to review at this time.
 
 
 6
 Appellants raise two issues on appeal: (1) whether Metro has the power to condemn Rock Creek Cemetery for any purpose, including the purpose of completing eight test borings, and (2) whether Metro was required to join as defendants in this action all owners of burial plots in the Cemetery. We hold that Metro has the power to condemn a property interest in the cemetery for the purpose of making the proposed test borings, and that Metro was not required to join all owners of burial plots.
 
 
 7
 Metro filed its complaint pursuant to section 82 of the Washington Metropolitan Area Transit Authority Compact, which provides in pertinent part:
 
 Condemnation
 
 8
 82. (a) The Authority shall have the power to acquire by condemnation, whenever in its opinion it is necessary or advantageous to the Authority to do so, any real or personal property, or any interest therein, necessary or useful for the transit system authorized herein, except property owned by the United States, by a signatory, or any political subdivision thereof . . . .
 
 
 9
 (b) Proceedings for the condemnation of property in the District of Columbia shall be instituted and maintained under (16 D.C.Code §§ 1351-1369 (1973)) . . . .
 
 
 10
 Pub.L. No. 89-774, 80 Stat. 1350-51 (1969), as codified in D.C.Code § 1-1431 (1973). Appellants argue that this general condemnation power does not authorize the condemnation of a property interest in the cemetery because of the common law rule that property already devoted to a public use is "protected from invasion by other uses except by express legislative action." Appellants Br. at 13.
 
 
 11
 Appellants have misperceived the common law rule which, properly stated, is:
 
 
 12
 If . . . a condemnor to whom the power of eminent domain has been delegated, such as a municipality or a private corporation, seeks to exercise the power with respect to property already devoted to a public use, the general rule is that where the proposed use will either destroy such existing use or interfere with it to such an extent as is tantamount to destruction, the exercise of the power will be denied unless the legislature has authorized the acquisition either expressly or by necessary implication. Such an acquisition cannot be effected under a general delegation of the power of eminent domain from the legislature, unless it can be clearly inferred from the nature and situation of the proposed work, and from the impracticability of constructing it without encroaching on land already used by the public, that the legislature intended to authorize such property to be taken.
 
 
 13
 1 J. Sackman, Nichols' The Law of Eminent Domain § 2.2 (1974) (footnotes omitted, emphasis added); Riley v. South Carolina State Highway Department, 238 S.C. 19, 118 S.E.2d 809 (1961). See generally, Annot., 109 A.L.R. 1502 (1937).
 
 
 14
 We need not decide whether Congress explicitly or implicitly authorized Metro to condemn cemetery property when it enacted section 82 of the Compact, for we do not think that the proposed use in the case sub judice the drilling of eight small test borings will either destroy the use of the property as a cemetery, or be so substantial as to be "tantamount to destruction."
 
 
 15
 At the district court hearing on Metro's motion for possession, the attorney for appellee Metro made the following representations, none of which has been controverted: 1) the taking will be limited to thirty days; 2) the taking is solely for the purpose of making eight test borings, each being four inches in diameter; 3) the borings will be made in the cemetery's roadway so that no graves will be physically disturbed; 4) each test boring will be filled in and the roadway restored to its original condition; and 5) access to all graves will be maintained at all times. Against these uncontroverted representations of the limited nature of the taking, it is clear that the test borings will be nothing more than a minor inconvenience to the cemetery. While it is true that drilling equipment will be necessary, undoubtedly heavy equipment is also used to prepare burial sites and to maintain the cemetery, and the sounds of traffic within and around the cemetery must necessarily interrupt its peace and tranquillity. Nevertheless, these intrusions are not desecretions tantamount to destruction, but rather, minor inconveniences of city life.
 
 
 16
 We stress that our holding today is a narrow one only that Metro may condemn a property interest in the cemetery for the limited purpose of making eight test borings in the cemetery's roadway. We intimate no view whatsoever concerning the condemnation of any greater property interest that might be necessary to construct the tunnel. Whether section 82 of the Compact empowers Metro to intrude further upon the cemetery is a case for another day.
 
 
 17
 Appellants also contend that before Metro could maintain this action, it was required by Fed.R.Civ.P. 71A to join the owners of burial rights in the cemetery. We think that appellants have misconstrued the rule. Rule 71A(c)(2) provides in pertinent part that:
 
 
 18
 Upon the commencement of the action, the plaintiff need join as defendants only the persons having or claiming an interest in the property whose names are then known, but prior to any hearing involving the compensation to be paid for a piece of property, the plaintiff shall add as defendants all persons having or claiming an interest in that property whose names can be ascertained by a reasonably diligent search of the records, considering the character and value of the property involved and the interests to be acquired, and also those whose names have otherwise been learned.
 
 
 19
 The Rule sets forth separate joinder requirements at the commencement of the proceeding and at the compensation stage. Upon commencement, plaintiff need join only those persons having or claiming a property interest who are known to the plaintiff. Only later, when the court is determining the compensation to be awarded, must the government as plaintiff make a search of the records and join other parties.
 
 
 20
 Appellants do not contend that Metro knew the names and addresses of persons claiming an interest in the property to be taken when it commenced this action. Rather, they argue that they informed Metro that a list of owners of burial rights could be obtained at the cemetery's office and that the cemetery would furnish a list of affected parties at Metro's expense.
 
 
 21
 We do not believe that this information constitutes knowledge within the meaning of rule 71A. At most Metro knew of the existence of records that might indicate persons who could claim an interest in the property. Appellants are attempting to apply the compensation stage joinder requirements to the commencement stage of the proceeding. Moreover, it is clear that when the government files a condemnation action it may rely on the state of the title at the time of the filing:
 
 
 22
 it is clear from Rule 71A, Rules of Civil Procedure 28 U.S.C.A., that the government may rely on the state of title at the date of taking, and name as defendants those who appear of record as the owners.
 
 
 23
 The Rule speaks of those parties known to have an interest and refers to a search of title. We are confident that no consideration need be given at the time of filing a condemnation action to equitable or unrecorded owners.
 
 
 24
 United States v. 3,276.21 Acres of Land, 194 F.Supp. 297, 301 (S.D.Cal.1961). In the case sub judice, the Vestry of Rock Creek Parish is the fee title holder. Thus, even assuming arguendo that the holders of burial rights have some interest in the property taken, and that Metro must at some point search the cemetery's records, it was not required to join holders of burial rights at the commencement of this action as they were not known to it.
 
 
 25
 On November 14, 1974, a division of this court stayed the possession order of the district court during the pendency of this appeal. For the reasons stated herein, the stay is dissolved and the order of the district court is
 
 
 26
 Affirmed.