**UNITED STATES of America, Plaintiff,**

v.

**Bernard A. HANTEN, Elaine M. Hanten, individually and as a partnership known as Morrison's Lodge, dba Morrison's Lodge and Cottages et al., Defendants.**

**Civ. No. 78–927.**

United States District Court,
D. Oregon.

Oct. 31, 1980.

Sidney I. Lezak, U. S. Atty., Henry C. Lorenzen, Asst. U. S. Atty., Portland, Or., for plaintiff.

William B. Murray, Portland, Or., for defendants.

## OPINION

BELLONI, District Judge:

Defendants B. A. Hanten and Elaine Hanten are owners of approximately 43.6 acres of land adjacent to the Rogue River. This land is bisected by the Merlin Galice Road. Approximately 27.9 acres lie south of this road and consists of undeveloped forest land. The remaining property lies between the road and the river and contains a commercial business known as Morrison's Lodge. This lodge caters to fishermen and river oriented activities.

On October 11, 1978, the United States of America, plaintiff in this action, filed a Declaration of Taking and Complaint in Condemnation which initiated proceedings to take a scenic easement in defendants' property pursuant to the Wild and Scenic Rivers Act of 1968, 16 U.S.C. § 1271 et seq.

The Act authorizes the Secretaries of Agriculture and of the Interior (Interior, in this case) to "acquire lands and interests in land" within the boundaries of any component of the national wild and scenic rivers system. 16 U.S.C. § 1277(a). However, the government is not to acquire any further fee title in an area such as the Valley of the Rogue where 50 per centum or more of the entire acreage is already publicly owned. 16 U.S.C. § 1277(b). In this case, the Act provides the federal condemnation power is to be used only (1) to clear title, (2) to acquire scenic easements, and (3) to obtain other easements for public access to and passage along the river. *Id.*

The term "scenic easement", according to the definitions section of the Wild and Scenic Rivers Act (16 U.S.C. § 1271, et seq.) "means the right to control the use of land (including the air space above such land) ... for the purpose of protecting the natural qualities of a designated wild, scenic or recreational area, but such control shall not affect, without the owner's consent, *any regular use exercised prior to the acquisition of the easement.*" 16 U.S.C. § 1286(c) [emphasis supplied].

Defendants contend that a number of prior uses are affected by the scenic easement imposed on their property. On August 7, 1980, I held a hearing to determine which, if any, easement provisions were invalid due to their effect upon prior regular uses. My decision is based upon testimony and exhibits submitted at the hearing, on briefs filed for the United States and for the Hantens, and on proposed findings submitted after the hearing.

(1) *Logging.* The defendants allege that the prior regular use of the 27.9 acres south of the road was the harvesting of marketable timber. I disagree.

The evidence demonstrates that the timber on this site has been previously harvest-

ed on only one occasion, in about 1958. This single harvest does not satisfy the definition of "regular" adopted by Judge Burns in *U. S. v. Trenor Scott,* Civ. No. 76–352–M.F. 101–1 (D.Or. Aug. 29, 1978). In interpreting § 1286(c), the court there adopted the generally accepted meaning of the word "regular" as

> steady or uniform in course, practice, or occurrence; not subject to unexplained or irrational variation; steadily pursued
> . . . .

Websters Third New International Dictionary (1966).

Defendants' incomplete harvest on a single occasion does not constitute a regular use under this definition.

Defendants' contention that the slow nature of timber growth permits harvesting only on a long term basis is not convincing. Mr. Hanten's testimony shows that no replanting, brush control, or selective thinning has occurred on the property since the 1958 harvest. The land has simply been allowed to return to its natural state. To find this single harvest is a regular use, despite the lack of any evidence showing defendants subsequent management of the property for timber production, would frustrate the very purpose of the Act. Undoubtedly much of the land along the Rogue River has been subject to one timber harvest. To permit continued logging based on but one previous timber harvest would open up the area to the scarring effects of logging and would destroy the scenic value the Act seeks to preserve.

(2) *Salmon Boards.* Defendants claim prior regular use in the placing of a "salmon board" (temporary fishing platform) in the river during the fishing season. The easement condemned by the government would allow the use of one "salmon board" through June 15th of each year.

I find, in light of the purpose of the "salmon boards" and testimony at the hearing, that the arbitrary date of June 15th is inappropriate. The "salmon board" may be kept in the river until the end of the annual salmon fishing season.

(3) *The 10′ Access Easement.* The government claims the following easement in defendant's land:

> ". . . the right to permit the public to walk on, and fish from a strip of land ten (10) feet in width along the waters edge of the Rogue River."

Defendant contends that this provision affects his prior regular use of this 10′ strip and is therefore invalid.

Section 1277(b) of the Wild and Scenic Rivers Act provides authority for "such other easements as are necessary to give the public access to the river and to permit its members to traverse the length of the area, or selected segments thereof". This provision is not subject to the definitional restrictions which apply to scenic easements. Thus, the fact that some prior regular use is affected does not invalidate this easement. The Act clearly provides for the acquisition of such easements and this court is without authority to consider the necessity or desirability of this acquisition. *U. S. v. 80.5 Acres of Land, etc.,* 448 F.2d 980 (9th Cir. 1971).

(4) *Other Easement Provisions.* All other easement provisions contained within Schedule B of the Declaration of Taking are permitted under the Act. No prior regular uses of the property are affected by these provisions.

(5) *Agreement by the United States.* The plaintiff United States has agreed as follows:

(a) Under the terms of the condemned scenic easement, the landowners may grub, prune, and cut the vegetation (with the exception of mature trees) so as to maintain the view from all structures as it existed immediately prior to the filing of the present condemnation action (October 11, 1978).

(b) Under the terms of the condemned scenic easement, the landowners may use the permitted dock in a manner consistent with such use as existed prior to the filing of the present condemnation action (October 11, 1978), without limitation to power boats.

(c) The condemned scenic easement does not prohibit the temporary storage of garbage in a manner consistent with the methods of garbage storage employed prior to the imposition of the subject scenic easement.

(d) Under the terms of the condemned scenic easement, the landowners may continue to dispose of tree trimmings, leaves, and grass cuttings in a manner consistent with those methods employed prior to the imposition of the subject scenic easement.

(e) Under the terms of the condemned scenic easement, in time of drought, if Taylor Creek has insufficient water flow, water may be pumped from the Rogue River for purposes of irrigation and fire protection of the Morrison's Lodge area. Such pumping facilities shall be visually and audibly screened to the satisfaction of the Bureau of Land Management.

The Judgment entered in this case shall reflect that the defendants may maintain a salmon board throughout the annual salmon fishing season. Judgment shall also reflect the Agreement of the United States. The condemnation of the easement in this case, in all other respects, is permitted under the provisions of the Wild and Scenic Rivers Act. 16 U.S.C. §§ 1271 et seq. Therefore, the only issue remaining is the determination of just compensation, to be addressed in a subsequent proceeding.

This opinion shall constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).