**HANES DYE AND FINISHING COMPANY, Inc., and Frank L. Blum Construction Company, Inc., Plaintiffs,**

v.

**CAISSON CORPORATION, Pittsburgh Testing Laboratories, Inc., and Seaboard Surety Company, Defendants.**

No. C–141–WS–69.

United States District Court,
M. D. North Carolina,
Winston-Salem Division.

Feb. 12, 1970.

W. P. Sandridge, Sr., and E. Lawrence Davis, III, of Womble, Carlyle, Sandridge & Rice, and G. Dudley Humphrey, Jr., of Hudson, Petree, Stockton, Stockton & Robinson, Winston-Salem, N. C., for plaintiffs.

Bynum M. Hunter and Doris R. Bray, of Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., and John M. Minor and William K. Davis, of Deal, Hutchins & Minor, Winston-Salem, N. C., for defendants.

## MEMORANDUM OPINION

GORDON, District Judge.

Desirous of adding onto an industrial plant in the City of Winston-Salem, North Carolina, Hanes Dye and Finishing Corporation, Inc. (Hanes) negotiated a construction contract with Frank L. Blum Construction Company, Inc. (Blum), a general contractor. Subsequently, Blum subcontracted with Caisson Corporation (Caisson) to construct for $205,000.00 a foundation of 185 caissons to be founded on material capable of withstanding a weight of 35 tons per square foot. Seaboard Surety Company (Seaboard) and Blum then entered into an indemnity agreement guaranteeing Caisson's faithful and prompt performance of the contract.

Because of an alleged controversy as to the proper depth of holes into which the concrete caissons would be poured, Hanes employed Pittsburgh Testing Laboratories, Inc. (Pittsburgh) to inspect the work. It is alleged that Pittsburgh did inspect, and that they approved the depth of the holes, the bearing surface at the bottom of the holes, and the manner in which the holes were cleaned prior to the pouring of concrete. (Dirt mixed with concrete in such a structure will greatly lessen its supportive value since the dirt will crumble under much less weight than will solid concrete.)

Just prior to the caissons being completed, Hanes allegedly became concerned about the work done by Caisson and the inspection by Pittsburgh. Independent tests revealed that the supportive value of several caissons was questionable. It is alleged that all parties except Seaboard agreed that a load test should be conducted upon a selected caisson without the test constituting an admission of liability by any party. The selected caisson failed.

Hanes and Blum, claiming that the cost of inspecting each caisson would be prohibitive, authorized Southern Foundation Company, Inc., to make certain corrective changes. The cost of these changes is estimated at approximately $213,000.00.

Blum who had already paid Caisson $11,845.94 refused to pay the balance and they are in dispute as to whether any or all of the $205,000.00 should be

paid. Hanes refused to pay Pittsburgh its inspection charge of $3,813.15.

Joining as parties plaintiff, Hanes and Blum have instituted this action pursuant to 28 U.S.C. § 2201 et seq. seeking declaratory relief against Pittsburgh, Caisson and Seaboard. They allege that both Pittsburgh and Caisson failed to exercise due care in executing their contractual obligations as set out in the agreements between the parties.

Subsequent to the institution of this action, Caisson filed suit against Blum in the North Carolina General Court of Justice, Superior Court Division, Guilford County, and alleged that Blum's refusal to pay the remaining balance of $193,154.06 was in breach of their contract.

Returning to this Court, Caisson and Seaboard now move, upon the several grounds hereinafter to be discussed that the declaratory judgment action be dismissed.

## DISCUSSION

Four contentions underpin Caisson and Seaboard's motion for dismissal. These contentions and the questions they raise will be discussed in the same order as they appear in the motion.

(1) Should the Court, upon the facts alleged in the complaint, exercise its discretion and dismiss the action?

The defendants extend two lines of reasoning in support of their contention that a discretionary dismissal should be granted. Neither are persuasive.

They maintain (a) that the state court would be the more appropriate forum because North Carolina law is determinative of the issues in this case and that (b) all issues presented in the federal action would be disposed of in the action pending before the state court.

■ (a) Since Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), federal courts sitting in civil actions by virtue of diversity jurisdiction have applied the substantive law of the forum state. As North Carolina courts in criminal actions are charged with upholding and protecting the Constitutional rights of criminal defendants, so the federal courts sitting in civil actions in North Carolina must fully appreciate their responsibility to adopt and properly apply North Carolina substantive law. While the federal and state courts might be separate vehicles of justice, they have as a common destination one goal—the just, speedy and inexpensive determination of litigation.

Where the state action is instituted *first* and the *same* issues of law and fact can there be settled, federal courts often react with favor upon a motion to dismiss. The facts in the instant case, however, present a different situation. Here the state suit was begun *after* commencement of this action. The practice of allowing a party defendant in a federal action to institute suit in the state court, then return to federal court and obtain dismissal would, without substantial justification, erode the pathway leading toward that common destination sought by both court systems. A defendant, having been beaten to the courthouse, would have at his election the advantage of reversing his status, wresting his opponent into the defendant's corner, then assuming the offensive position of plaintiff unto himself.

■ (b) The defendant also contends that all issues inherent in this action would be determined by the state court's disposition of Caisson v. Blum. However, it is uncertain at best whether Hanes and/or Pittsburgh would or even could be made parties to that suit. Whether Pittsburgh did in fact fail to exercise due care in testing the caisson sites and in their calculations and advice is a question indispensable to a final determination. If, indeed, Pittsburgh were negligent, final disposition of the problems arising from this transaction or occurrence, as the case may be, could not be had without measuring the ultimate impact of that negligence upon the legal relations of all other parties.

Even though a district court might have the *power* to dismiss a declaratory judgment action within its discretion, should this particular case—considering all the circumstances attendant—be so handled, it would indeed be a poorly considered discretion exercising that power.

(2) Should these proceedings be stayed pending disposition of the state litigation?

For reasons stated in the above discussion, a stay of this proceeding to await the decision of state trial and possibly appellate tribunals would appear neither expeditious nor less expensive for the parties.

(3) Do the facts as set forth in the complaint reveal a controversy properly justiciable under the Federal Declaratory Judgment Act?

28 U.S.C. § 2201 provides:

"In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, *may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.* Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." (Emphasis added)

Rule 57 of the Federal Rules of Civil Procedure states:

"The procedure for obtaining a declaratory judgment pursuant to Title 28 U.S.C. § 2201, shall be in accordance with these rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided in Rules 38 and 39. The existence of *another adequate remedy* does not preclude a judgment for declaratory relief in cases where it is appropriate. The court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar."

"The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Aetna Casualty and Surety Co. v. Quarles, 4 Cir., 92 F.2d 321, 325 (1937) *quoting from Borchard, (Declaratory Judgments. 107–109).*

"The very justification for the existence of the right to maintain a declaratory action is to expedite the ascertainment of rights, stabilize relations and dissipate uncertainty." [1]

■ The adjudicated cases leave little doubt that before an action for a declaratory judgment may stand, it must involve an actual controversy, a genuine dichotomy of contention upon which specific relief may be granted. F. E. Myers and Bros. Co. v. Gould's Pump, Inc., 7 F.R.D. 416 (W.D.N.Y.1947); Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, et al, 300 U.S. 227, 57 S.Ct. 461, 464, 81 L.Ed. 617, 108 A.L.R. 1000 (1936); Flast, et al. v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

The defendants maintain (a) that this is in the nature of a premature tort action; (b) that damages are not at this time fully ascertainable; and (c) that the action has been improperly commenced as anticipating a defense to a possible suit.

■ Defendants seemingly have based their contention that this is a premature tort action upon their further assertion that damages are not yet fully ascertainable. Their argument finds little basis in law. The North Carolina Supreme Court has explicitly held that a cause of action, whether in tort or contract, accrues upon the breach of a duty owed by one to another. It is the *act* by which the duty is breached and not the

1. Anderson, Actions for Declaratory Judgments, Vol. 1, § 228, p. 512.

ensuing damages which give birth to a cause of action.

"It is well settled that in an action for damages, resulting from negligent breach of duty, the statute of limitations begins to run from the breach, from the wrongful act or omission complained of, without regard to the time when the harmful consequences were discovered." Shearin v. Lloyd, 246 N.C. 363, 98 S.E.2d 508 (1957).

In Jewell v. Price, 264 N.C. 459, 142 S.E.2d 1 (1965), Justice Sharp speaking for the court said:

"Where there is either a breach of an agreement or a tortious invasion of a right for which the party aggrieved is entitled to recover even nominal damages, the statute of limitations immediately begins to run against the party aggrieved, unless he is under one of the disabilities specified in G.S. 1–17. (Cites omitted) Nominal damages may be recovered in actions based on negligence. (Cites omitted) The accrual of the cause of action must therefore be reckoned from the time the first injury, however slight, was sustained. (Cites omitted) It is unimportant that the actual or the substantial damage does not occur until later if the whole injury results from the original tortious act. '[P]roof of actual damage may extend to facts that occur and grow out of the injury, even up to the day of the verdict. If so, it is clear the *damage* is not the cause of action.' " (quoting from Wilcox v. Executors of Plummer, 29 U.S. (4 Pet.) 172, 182, 7 L.Ed. 821, 824 (1830).

If in the instant case contractual duties were in fact breached by negligent acts or omissions, and as a result the defendants indeed failed to comply with their agreements, the cause of action accrued fully. The ascertainability of damages is an evidentiary matter, the plaintiffs being entitled to recover whatever damages, if any, they prove themselves entitled to.

■ ■ There is also little merit to defendants' contention that this action has been improperly commenced as anticipating a defense. While it is a well recognized principle that a declaratory judgment action may not be brought to determine the *sufficiency* of a defense to a possible suit, a distinction must be drawn between the anticipation of a mere defense and the anticipation—by bringing forth all the issues for a present determination—of the suit itself. Aetna Casualty and Surety Co. v. Yeatts, 4 Cir., 99 F.2d 665 (1938).

"It is immaterial that frequently, in the declaratory judgment suit, the positions of the parties in the conventional suit are reversed; the inquiry is the same in either case." Maryland Casualty Co. v. Pacific Coal and Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L. Ed. 826 (1941).

In consideration of the above, it must be concluded that this is a controversy properly justiciable under 28 U.S.C. § 2201 et seq.

■ (4) Does the claim asserted against Caisson and Seabord exceed in amount the jurisdictional requirement of $10,000.00?

Blum contends that Caisson breached its agreement and is therefore not entitled to receive the contract price of $205,000.00. Further, Blum contends that Caisson is liable in the amount of $8,000.00 necessary to make it whole for the $213,000.00 spent in taking corrective measures so that the foundation would support 35 tons per square foot.

If it is found that Caisson did not in fact breach its contract, then Blum will be out the $205,000.00 contract price to Caisson plus the $213,000.00 spent for the corrections alleged to have been necessary. That an amount in excess of $10,000.00 stands controverted between these parties is not in doubt.

For the foregoing reasons, it is concluded that the motion for dismissal by defendants Caisson and Seaboard should not be granted.

In order to expedite this proceeding pursuant to Rule 12(f) of the Rules of Civil Procedure which in part provides:

"[U]pon the court's own initiative at any time, the court may order stricken from any pleading any *insufficient defense* or any redundant, immaterial, impertinent or scandalous matter." (Emphasis added)

and for the following reasons, an order shall be entered directing that the first five defenses of Pittsburgh Testing Laboratories, Inc., be stricken.

1. As a first defense, Pittsburgh maintains that there is a lack of the jurisdictional amount in controversy.

■ Should Pittsburgh be found to have performed its contractual duties in a manner inconsistent with applicable legal standards of due care and should it further be found that this negligence was the sole and proximate cause necessitating an estimated expenditure of $213,000.00 to correct the harm resulting, Pittsburgh's liability to Hanes and/or Blum as the evidence of their legal relations might show, could follow, which amount could reasonably be expected to exceed $10,000.00.

Should Pittsburgh be determined contributorily negligent and upon further determination it is found that its negligence combining with that of another was the sole and proximate cause necessitating the above-mentioned expenditures, Pittsburgh could be liable for a pro-rata share which reasonably would not be below the $10,000.00 jurisdictional amount.

Also involved and for consideration are the following elements: $3,813.15 which Hanes contracted to pay Pittsburgh for proper testing services, any extraordinary expenses spent by Hanes to procure additional testing, and any loss of profits actually resulting from the two months delay allegedly required to implement corrective measures.

Pittsburgh's first defense is, therefore, adjudged insufficient and as such should be stricken.

2. As a second defense, it is contended that there has been stated no claim against defendant Pittsburgh upon which relief may be granted.

■ It is elementary in deciding whether there has been stated a claim upon which relief might be granted that facts as set forth in the complaint be interpreted in the light most favorable to the plaintiff. All doubts must be resolved in his favor.

■ The complaint alleges that Pittsburgh's failure to exercise due care in pursuing its contractual obligations with Hanes and the breach resulting therefrom, put Hanes to extraordinary expense in obtaining the advice of another testing laboratory and caused a two month delay in final construction, accompanied by a consequential loss of profits. The complaint also alleges that Pittsburgh's failure to exercise due care was a contributing force in their having to obtain the implementation of corrective measures.

All elements necessary to establish liability in both tort and contract have been more than sufficiently alleged. Accordingly, the second defense of Pittsburgh being adjudged insufficient, it is concluded that such defense should be stricken from the pleadings.

3. Thirdly, defendant Pittsburgh has alleged an improper joinder of parties plaintiff and parties defendant.

Rules pertaining to the joinder of parties in a declaratory judgment action correspond with those Rules of Civil Procedure governing joinder in conventional suits.

Rule 20(a) of the Federal Rules states:

"All persons may join in one action as plaintiffs if they assert any right to relief *jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences* and *if any question of law or fact common to all of these persons will arise in the action.* All persons may

be joined in one action as defendants if there is asserted against them *jointly, severally, or in the alternative,* any right to relief in respect of or arising out of the *same transaction, occurrence, or series of transactions or occurrences* and *if any question of law or fact common to all defendants will arise in the action.* A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities." (Emphasis added)

In order for parties to be joined pursuant to Rule 20(a), there are two requirements which must be met. (1) A claim or claims asserted by the plaintiffs and/or against the defendants must arise out of the same transaction or occurrence or series of transactions or occurrences and there must be involved (2) a question of law or fact common to all the parties.

(1) In the instant action all claims arise from what is alleged to be a *defective construction of caissons.* All parties were, in some manner of interest, involved in that transaction.

(2) There are several questions of both law and fact common to all parties concerned; i. e., (a) Were the caissons defective? (b) Did one or both of the defendants Caisson and Pittsburgh fail to exercise due care in the execution of contractual undertakings? (c) If performance of contractual obligations did indeed lapse below applicable legal standards of due care, did that lapse proximately result in the caissons being unfit for the uses contemplated?

Rule 20(a) also states that plaintiffs may join and defendants may be joined if there is asserted any right to relief jointly, severally, or in the alternative. If one or both of the parties

should be found guilty of negligence proximately necessitating additional testing expenses as well as other expenditures required to correct the faulty construction, the party or parties guilty of that negligence will be liable for those losses to one or both of the plaintiffs as their legal relationships might show.

The subject matter being common to all parties and arising from the same transaction, there is no question of joinder being permissible; and, in this particular situation, little doubt but that the administration of justice would limp forward, hamshackled, had even one of these parties not been joined.

For the foregoing reasons and also in consideration of Rule 42(a), it is adjudged that the third defense of Pittsburgh is insufficient and should be stricken from the pleadings.

4. As a fourth defense, Pittsburgh contends that the complaint involves matters outside the scope of the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.

For reasons set out in Section 3 of the Discussion in this Memorandum Opinion denying defendant Caisson and defendant Seaboard's motion to dismiss, it is determined that defendant Pittsburgh's fourth defense should be striken.

5. Pittsburgh's fifth defense provides that the matter of Caisson v. Blum now pending in the State court would resolve this entire controversy.

For the reasons set forth in Section 1(b) of the Discussion in this Memorandum Opinion denying defendant Caisson and defendant Seaboard's motion to dismiss, it is determined that defendant Pittsburgh's fifth defense is insufficient and should be stricken.

Accordingly, counsel for the plaintiffs will forthwith prepare and present to the Court a proposed order, first presenting same to counsel for the defendants for approval as to form.