UNITED STATES of America, Plaintiff-Appellee,

v.

416.81 ACRES OF LAND, etc., and Mercantile National Bank of Indiana, as Trustee, Defendants-Appellants.

No. 73–2104.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 15, 1975.

Decided April 22, 1975.

Rehearing Denied July 23, 1975.

628

Wayland B. Cedarquist, Chicago, Ill., Owen W. Crumpacker, Hammond, Ind., Malcolm E. Anderson, Chesterton, Ind., for defendants-appellants.

John R. Wilks, U. S. Atty., Fort Wayne, Ind., Richard Kieser, Asst. U. S. Atty., South Bend, Ind. and Wallace H. Johnson, Asst. Atty. Gen., Robert L. Klarquist, Atty., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before CLARK, Associate Justice,* CUMMINGS and TONE, Circuit Judges.

Mr. Justice CLARK.

The landowner in this condemnation proceeding[1] appeals from a jury verdict awarding $174,660.00 for Tract No. 02–126, consisting of 84.2 acres of undeveloped land near Lake Michigan, taken by the Government for the Indiana Dunes National Lakeshore.[2] Appellant complains that the jury award was grossly inadequate and attacks numerous rulings of the trial judge as prejudicial or erroneous. We have carefully examined the lengthy record and the briefs submitted by counsel and conclude that the judgment of the district court should be affirmed.

## I.

Appellant's first claim is that the district court erred in striking, *sua sponte*, all of the defenses and objections raised by the landowner in his responsive pleadings prior to trial. Landowner's answer was filed on June 22, 1970, specifying two "Objections" which appellant has summarized in his brief (along with a short description of the district court's conclusions) as follows:

### First Objection

FIRST GROUND: The only authority for the taking is the Indiana Dunes National Lakeshore Act of 1966, 16 USCA Sec. 460 [460u] et seq. COURT ORDER: States no Defense.

SECOND GROUND: The Act is unconstitutional in that it authorizes taking of lands without providing for just compensation and without due process. COURT ORDER: Too indefinite.

THIRD GROUND: The taking under the Act is constitutionally invalid as being in aid of the commercial seaport project, the Burns Waterway Harbor.

---

* Associate Justice Tom C. Clark, United States Supreme Court (Ret.) is sitting by designation.

1. On April 16, 1970, the United States filed a complaint in condemnation in the United States District Court for the Northern District of Indiana to acquire 416.81 acres of land, consisting of 12 tracts of land in Porter County, Indiana, three of which were owned by members of the Crumpacker family. The district court ordered separate jury trials. This appeal involves only the first and largest of these tracts, title to which was held at the time of trial by the Mercantile Bank of Indiana as trustee for Mr. and Mrs. Owen Crumpacker. The other two tracts are dealt with in a separate opinion as No. 74–1307 and No. 74–1308, since additional members of the Crumpacker family were involved and additional claims were raised. Owen Crumpacker, an attorney, acted as counsel for himself and the other family members in all three proceedings.

2. *See* 16 U.S.C. § 460u et seq. The congressional purpose of the Indiana Dunes National Lakeshore Act was "to preserve for the educational, inspirational, and recreational use of the public certain portions of the Indiana dunes and other areas of scenic, scientific, and historic interest and recreational value in the State of Indiana." 16 U.S.C. § 460u. The Secretary of the Interior was specifically authorized "to establish and administer the Indiana Dunes National Lakeshore", 16 U.S.C. § 460u, and "to acquire lands, waters, and other property * * * by donation, purchase * * *, exchange, or otherwise," 16 U.S.C. § 460u–1(a). The legislation authorized an appropriation of $27,900,000 for the acquisition of land for the program, 16 U.S.C. § 460u–9.

COURT ORDER: Fails to show bad faith or abuse of discretion.

FOURTH GROUND: The Act is constitutionally invalid in that, by virtue of the foregoing, it benefits encircling industries, to the detriment of adjacent properties. COURT ORDER: Fails to show bad faith or abuse of discretion.

FIFTH GROUND: The foregoing has had the result of increasing industrial property values 100% since 1959 while diminishing the value of adjacent properties. COURT ORDER: To be determined at Trial.

*Second Objection*

FIRST GROUND: The Government has discriminated against Landowner Crumpacker and others similarly situated with reference to purchasing procedures. COURT ORDER: Too indefinite.

SECOND GROUND: The Government's purchasing procedures for encircling industries are described and the Government's offers to individual property owners are stated to be about one-tenth of the same. COURT ORDER: Fails to show bad faith or abuse of discretion.

THIRD GROUND: The Government's use of an omnibus condemnation procedure, lumping dissimilar properties together, is prejudicial. COURT ORDER: No Defense.

On September 16, 1970, the district court entered a five-page order striking all of these objections *sua sponte*. Although Fed.R.Civ.P. 12(f) provides, and appellant acknowledges, that: "[U]pon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," appellant claims that his defenses should not have been stricken without notice and a hearing.

He argues that the district court was concerned in its order "not only with alleged insufficiency of certain Defenses but also with alleged indefiniteness, something to be cured as provided by Rule 12(e), Motion for a More Definite Statement." Appellant concludes that he should have been allowed a hearing and an opportunity to amend his answer.

█ We are not persuaded by the argument that the trial court should have held some sort of hearing prior to striking appellant's defenses. The essence of a motion to strike—whether made by a party or by the court sua sponte[3]—is the consideration of the defense on its face without further facts or elaboration, and in that sense a hearing is quite unnecessary. Where the legal issues presented by a defense were particularly complicated, the opportunity to present briefs and to make oral argument might be considered essential; indeed, in those circumstances, the motion to strike would likely be an inappropriate vehicle for the consideration of complex issues. But that is not this case.

█ Nor do we find any merit in appellant's contention that the district court in effect denied him the right to amend his pleadings. Nothing in the court's order forbade appellant from amending his answer, and we note that he never sought leave of court to file any amendments in the three full years between September 16, 1970, when his defenses were stricken, and September 27, 1973, when this case finally went to trial. We therefore perceive nothing prejudicial in the district court's order.

█ The broader question, of course, is whether the defenses were properly stricken as insufficient. The guidelines for this determination have recently been stated as follows:

---

**3.** Appellant seems to argue that the district court lacked the judicial power to strike his "constitutional" defenses. By its terms, Rule 12(f) gives unrestricted authority to the district court to strike "insufficient" defenses. Although one court has concluded that it lacked the power to strike a defense without a motion to strike by a party, Paramount Film Distribut-

ing Corp., 15 F.R.D. 404 (E.D.S.C.1954), the prevailing view is that a district court most certainly may *expedite proceedings by striking* insufficient defenses on its own initiative, *see, e. g.,* Hanes Dye and Finishing Company v. Caisson Corporation, 309 F.Supp. 237 (M.D.N.C.1970), and we so hold.

The duty of this Court is to determine whether such defenses as presented do indeed present substantial questions of law or fact which may not be stricken. If any such substantial questions exist, the motion cannot be granted; neither will it be granted if the insufficiency of the defense is not clearly apparent on the face of the pleadings, nor can reasonably be inferred from any state of facts in the pleadings. The purpose of such narrow standards is ". . . to provide a party the opportunity to prove his allegations if there is a possibility that his defense or defenses may succeed after a full hearing on the merits." [United States v. 187.40 Acres of Land, Huntingdon County, Pa., 381 F.Supp. 54, 56 (M.D.Pa.1974) (citations omitted).]

Although it is said that a motion to strike a defense as insufficient is "not favored" by the courts because of its potential as a dilatory tactic, *see* 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1381 (1969), it is nonetheless "a useful and appropriate tool" for weighing the legal implications to be drawn from uncontroverted facts, *id.* In this regard, a Rule 12(f) motion "admits only facts well pleaded, and mere conclusions of law, not warranted by the asserted facts have no efficacy." United States v. Certain Parcels of Land in Cheyenne, Wyo., 141 F.Supp. 300, 305 (D.Wyo.1956). Here, even accepting as true the factual underpinnings of appellant's objections, we do not perceive that any of them constitute a valid defense to the proposed taking.

On this appeal, the landowner paraphrases the fundament of his defense in the following manner:

The Government's taking, though ostensibly for Park purposes alone, was in fact done to further construction of the commercial seaport project known as Burns Waterway Harbor.

The Lakeshore Act, in fact, establishes a cordon of industries and commercial interests whose property values (favored by the foregoing tie-in) increased 100% since 1959, as against a two-thirds decrease in the value of Landowner Crumpacker's property since 1900.

The Government in October 1967 and in 1968 paid $14,000 an Acre to Inland Steel as against offers of one-tenth of that to private property owners.

The foregoing is part of a pattern of conduct by the Government, furthered by the Government's purchasing procedures, all resulting in discrimination against private non-commercial property owners, depriving them of property without just compensation and due process.

Though appellant's statement pieces together and rewrites different grounds from different objections, we will accept his version as the strongest presentation of his dual claims that the proposed taking was not for a public purpose and was arbitrary and capricious. Even under these circumstances, however, he has not alleged any sufficient defense. The only question for judicial review in a condemnation proceeding is whether the purpose for which property was taken is for a Congressionally authorized public use. Berman v. Parker, 348 U.S. 26, 32–33, 75 S.Ct. 98, 99 L.Ed. 27 (1954); United States ex rel. TVA v. Welch, 327 U.S. 546, 552, 66 S.Ct. 715, 90 L.Ed. 843 (1946). It is not for the courts to review the necessity of the taking. Berman v. Parker, *supra,* 348 U.S. at 35–36, 75 S.Ct. 98; United States v. Carmack, 329 U.S. 230, 247, 67 S.Ct. 252, 91 L.Ed. 209 (1946); United States v. Certain Real Estate, Nashville, Tenn., 217 F.2d 920, 924 (6th Cir. 1954); United States v. 80.5 Acres in Shasta County, Cal., 448 F.2d 980, 983 (9th Cir. 1971); United States v. 2606.84 Acres in Tarrant County, Tex., 432 F.2d 1286, 1289 (5th Cir. 1970). Nor is it for the courts to consider broadside allegations that the purported public use to be served is merely a pretense or a sham to cover arbitrary official conduct. United States v. 6,321 Acres in Suffolk County, Mass., 479 F.2d 404 (1st Cir. 1973); United States v. 80.5 Acres in Shasta County, Cal., *supra;* United States v. Bowman, 367 F.2d 768 (7th Cir.

1966). Only in cases of egregious bad faith will the right to condemn be denied, United States v. 2606.84 Acres in Tarrant County, Tex., *supra*, 432 F.2d at 1290 (5th Cir. 1970), for in those circumstances the taking may not be for a "public" use at all.

Appellant seeks to bring himself under this latter exception and, in this regard places reliance on this Circuit's recent decision in United States v. 58.16 Acres in Clinton County, Ill., 478 F.2d 1055 (7th Cir. 1973). This reliance is wholly misplaced. In the *Clinton County* case, a landowner made detailed allegations that the Corps of Engineers was condemning his land solely to avoid compensating him for the damages he had suffered from erosion caused through their maintenance of high reservoir water levels that directly precipitated wave action which washed away his land; he further claimed that he was the only landowner against whom condemnation was pursued. This Circuit held that, in light of such detailed allegations of bad faith, the district court could not summarily dispose of the landowner's claims without a hearing. *See also* United States v. 113.81 Acres in Stanislaus County, Cal., 24 F.R.D. 368 (N.D.Cal.1959).

■■■■ Even if the instant condemnation were in aid of a commercial seaport project, as appellant alleges, the decision in Berman v. Parker has made it clear that private land may be taken and conveyed to another private owner if it benefits an overall public purpose. The landowner's idea of public use may not be substituted for the purposes prescribed by Congress. *See* United States v. 80.5 Acres in Shasta County, Cal., *supra*. Nor is bad faith sufficiently alleged by a claim that prices paid for one piece of property were higher than that for another. Every public project of this type may result in comparative benefits to some and injuries to others, and mere disparity in compensation does not justify prohibiting the taking. Just compensation is a matter left to be determined by the jury at trial. As was said in United States v. Southerly Portion of Bodie Island, N. C., 114 F.Supp. 427 (E.D.N.C.1953):

> To allege bad faith a party must charge facts rather than conclusions, and such facts must suggest actual malevolence by the officer toward the complaining party. [114 F.Supp. at 430.]

Appellant's vague and conclusory objections did not state any valid defenses, and the trial court's order striking them must be affirmed.

## II.

■■■ Appellant next complains of the striking of his interrogatories which were filed on August 24, 1970. It appears that these interrogatories received little or no attention from the parties or the court, except for some slight mention during the first pre-trial conference in December of 1970 and did not even rate a mention in the first pre-trial order. On October 30, 1972, over two years after they were filed, the landowner moved the court for an order compelling the Government to answer. The court *sua sponte* ordered that the interrogatories be stricken on November 2, 1972, noting in his order that most of the questions related to the various defenses and objections which had been stricken in September of 1970. The court then directed appellant to submit new interrogatories going only to the question of just compensation. None were ever filed and the landowner now claims error. In light of our upholding of the district court's striking of appellant's defenses, we perceive no error here.

## III.

■■■ Appellant next claims that the district court made certain prejudicial remarks during the trial which now call for reversal. The landowner in this case, Owen Crumpacker, served as his own counsel. On the first day of trial, Mr. Crumpacker engaged in some verbal "dueling" with one of the witnesses, a man named Fabian who had been employed by the Government to survey Tract 02–126. The trial judge admon-

ished Mr. Crumpacker with reference to his cross-examination of Fabian:

> THE COURT: Mr. Crumpacker, I told you at the beginning we are not going to try the people, the witnesses. We are going to try the issues. Now every other lawyer up here can do it, and I hope you can. If you have something relevant to the issue that will help the Jury, please ask it. Otherwise don't keep prodding me.

On the second day of the trial, during the cross-examination of Richard Adomatis, a Government appraiser, Mr. Crumpacker again became critical of the witness. The trial judge suggested that defense counsel avoid getting into "differences between himself and the witness" and instead stay on the issues. Mr. Crumpacker, however, pursued his "differences" with the witness, asking whether Adomatis had asked Mr. Crumpacker's permission to go on the tract of land involved. The trial judge again admonished Mr. Crumpacker:

> I have been over this in the motions. I have been over this at the bench, and I will stand by the record, and you can go to the Court of Appeals, but this has nothing to do with the issues. You try to attack everyone that takes the witness stand and . . .
>
> MR. CRUMPACKER: I am sorry.
>
> THE COURT: . . . Now I will try to run this trial, and I have put my rulings in writing, and they are in the file, and you may go, sir.

Though appellant never objected to these comments or moved for a mistrial, he now claims that the clear implication of these remarks was that the witness was right and Mr. Crumpacker was wrong. Even if this were true, we do not think it reached the point of plain error, especially since the trial judge in his charge not only directed the jury to "put all such matters out of your mind and decide this case solely on the evidence . . .", but characterized the lawyers in this case as "fine, experienced and seasoned lawyers. I have had them on numerous occasions and I know of what I speak . . . So nothing I said at any time to any witness or to either of the fine lawyers should indicate to you that I am being critical of that lawyer or that side or that position or that I am taking sides." We see no error in the court's remarks.

## IV.

■ Appellant next argues that the jury verdict was grossly inadequate. We note that the final price of $2,500 per acre was within the range of the evidence since the Government estimated a low of $1,590 and appellant estimated a high of $7,200. There was conflicting evidence on comparable sales, potential use of the property, as well as the condition of the soil on the property, all of which the jury could weigh in reaching its verdict, and we cannot substitute our findings for those of the jury. As the Eighth Circuit held in Hoblik v. United States, 151 F.2d 971, 973 (1945): "There is nothing that settles an issue of fact with greater finality and conclusiveness than the verdict of a jury".

## V.

■ Appellant's final argument seems to be that the Government is unconstitutionally taking his property and that of others "to create a harbor for private industrial use". They cite Kessler v. City of Indianapolis, 199 Ind. 420, 157 N.E. 547 (1927). This case is inapposite. The Congressional purpose of the Indiana Dunes Act—to save the lakeshore for the recreational and inspirational use of the public—is clearly stated in 16 U.S.C. § 460u; the creation of the Burns Waterway Harbor is at best an incidental event. Even if it were not, such a use would be permissible, see Berman v. Parker, *supra.*

For the reasons stated, the judgment is

Affirmed.