**GO–TANE SERVICE STATIONS, INC., Plaintiff,**

v.

**ASHLAND OIL, INC., Defendant.**

**No. 79 C 1675.**

United States District Court, N. D. Illinois, E. D.

Feb. 5, 1981.

---

William H. Bode, Batzell, Nunn & Bode, Washington, D. C., Richard M. Calkins, James W. Hathaway, Burditt & Calkins, Chicago, for plaintiff.

William A. Streff, Jr., Kirkland & Ellis, Chicago, Robert W. Hawkins, Ginsburg, Feldman & Bress, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff, Go-Tane Service Stations, Inc. ("Go-Tane"), filed this action against defendant, Ashland Oil, Inc. ("Ashland"), alleging that Ashland sold motor gasoline to Go-Tane at prices in excess of those permitted by the Mandatory Petroleum Allocation and Price Regulations, 10 C.F.R. §§ 211 and 212, promulgated pursuant to the Emergency Petroleum Allocation Act, 15 U.S.C. § 751 et seq., and the Economic Stabilization Act of 1970, 84 Stat. 799, as amended 85 Stat. 743. Jurisdiction is grounded in 28 U.S.C. § 1331(a) and the amount in controversy is alleged to be in excess of $10,000 exclusive of interest and costs. Presently before this Court is Go-Tane's motion to strike Ashland's sixth affirmative defense,[1] in which Ashland asserts that even if Go-Tane can prove its overcharge allegations it did not suffer any damages since it merely passed on any overcharges to its own customers. Fed.R.Civ.P. 12(f).[2] Go-Tane fur-

---

1. Ashland's sixth affirmative defense states that:

Plaintiff is not entitled to any of the relief and damages sought in the complaint. However, even assuming arguendo the existence of an overcharge, plaintiff was not damaged by any such overcharges because plaintiff passed through all charges incurred by it in purchases of motor gasoline from defendant when plaintiff resold that motor gasoline to its customers.

2. Ashland contends that Go-Tane's Rule 12(f) motion to strike Ashland's sixth affirmative defense should be denied because the motion was filed more than twenty days after the service of Ashland's answer. However, Rule 12(f) "gives unrestricted authority to the district court to strike 'insufficient' defenses." United

ther moves this Court for a protective order prohibiting any discovery by Ashland in support of its sixth affirmative defense. Fed.R.Civ.P. 26(c).

In *Hanover Shoe, Inc. v. United Shoe Machine Corp.*, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968), the Supreme Court held that, as a general rule, the "pass-on" theory was not available as a defense in an antitrust case in which the plaintiff sought treble damages for alleged overcharges resulting from the defendant's antitrust violations. The Court noted that, "in the real economic world rather than an economist's hypothetical model," it would be extremely difficult to determine what part of a direct purchaser's price increase was in response to an overcharge, and thus what portion of the overcharge was passed through to indirect customers. 392 U.S. at 493, 88 S.Ct. at 2231. The Court barred the defensive use of the pass-on theory for two reasons: to avoid the long and complex proceedings that would be necessary to prove that the direct purchaser passed on all overcharges to its customers and to deter unlawful activity by ensuring that those who violate the antitrust laws do not retain the "fruits of their illegality," merely because the one potential plaintiff with sufficient incentive to sue—the direct purchaser—is barred from bringing the action.[3] 392 U.S. at 493–94, 88 S.Ct. at 2231–32. The Court did recognize, however, that "there might be situations—for instance, when an overcharged buyer has a pre-existing 'cost-plus' contract, thus making it easy to prove that he has not been damaged—where the con-

siderations requiring that the passing-on defense not be permitted" would not be present. 392 U.S. at 494, 88 S.Ct. at 2232.

In *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), the Court had another occasion to consider the pass-on theory, this time as an offensive weapon used by indirect purchasers alleging that they were passed on to them through direct purchasing middlemen. The Court held that the *Hanover Shoe* rationale barred the offensive as well as defensive use of the pass-on theory, except in narrowly defined situations in which the proof problems discussed in *Hanover Shoe* would not present an insurmountable burden to the parties and the court.[4] Justice White, writing for the majority, reiterated that the exception to the bar on the pass-on theory was necessarily limited to narrowly drawn circumstances:

> [T]his Court in *Hanover Shoe* indicated the narrow scope it intended for any exception to its rule barring pass-on defenses by citing, as the only example of a situation where the defense might be permitted, a pre-existing cost-plus contract. In such a situation, the purchaser is insulated from any decrease in its sales as a result of attempting to pass on the overcharge, because its customer is committed to buying a fixed quantity regardless of price. The effect of the overcharge is essentially determined in advance without reference to the interaction of supply and demand that complicates the determination in the general case. *Id.* at 735–36, 97 S.Ct. at 2069.[5]

States v. 416.81 Acres of Land, 514 F.2d 627, 630 n.3 (7th Cir. 1975). This Court has authority to consider plaintiff's motion even though it was not made within the time limits established by Fed.R.Civ.P. 12(f). *Lunsford v. United States*, 570 F.2d 221, 227 n.11 (8th Cir. 1977).

3. The Court reasoned that if the pass-on defense was allowed, the only potential plaintiff in an overcharge suit would be the ultimate consumer, who would have "only a tiny stake in a lawsuit and little interest in attempting a class action." 392 U.S. at 494, 88 S.Ct. at 2232. This would substantially reduce the effectiveness of treble damage actions. *Id.*

4. The Court noted that of the two rationales discussed in *Hanover Shoe* in support of the decision to bar the pass-on theory except in narrowly defined circumstances, the concern with avoiding insurmountable proof problems was clearly more important than the concern with deterring unlawful behavior by enabling the direct purchaser to maintain an action unhampered by the alleged wrongdoer's speculative defense that it passed through any overcharges to its customers. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 732 n.12, 97 S.Ct. 2061, 2067 n.12, 52 L.Ed.2d 707 (1977).

5. In a footnote, the *Illinois Brick* Court noted that the pass-on defense might also be permit-

Several courts have also permitted the use of the pass-on theory in cases involving the "functional equivalent" of a cost-plus contract, which present none of the proof problems that disturbed the Court in *Hanover Shoe* and *Illinois Brick*. *See In re Beef Antitrust Litigation*, 600 F.2d 1148 (5th Cir. 1979), *cert. denied*, —— U.S. ——, 101 S.Ct. 280, 66 L.Ed.2d 137 (1980); *In re Western Liquid Asphalt Cases*, 487 F.2d 191 (9th Cir. 1973), *cert. denied sub nom.*, 415 U.S. 919, 94 S.Ct. 1419, 39 L.Ed.2d 474 (1974); *Obron v. Union Camp Corporation*, 477 F.2d 542 (6th Cir. 1973). Two of these cases involved the offensive use of the pass-on theory by indirect purchasers against defendants farther up the distribution chain, the other involved the defensive use of the theory by the seller in a suit brought by the direct purchaser.[6]

In the most recent of these cases, *In re Beef*, the United States Court of Appeals for the Fifth Circuit approved the offensive use of the pass-on theory by plaintiffs alleging the functional equivalent of a cost-plus contract. In that case, primary producers of beef cattle filed suit against certain re-tail food chains, a wholesale grocer, a national trade association, and a beef industry price reporting publication, alleging that the price the primary producers were paid for their product by the wholesale middlemen was depressed by price fixing at the retail level. Thus, an asserted "undercharge" was passed through to the primary producers by the direct purchasers, the middlemen. The district court had dismissed the case on the pleadings, but the court of appeals reversed, holding that the primary producers had stated a claim that fell within the cost-plus exception to the pass-on bar since they alleged that the pricing decisions of the middlemen were predetermined according to a formula without regard to the interactions of supply and demand. 600 F.2d at 1165. Thus, the court reasoned that the proof problems that troubled the Supreme Court in *Hanover Shoe* and *Illinois Brick* were not present because the free market forces that ordinarily would have determined what portion of the alleged "undercharges" was passed on to the primary producers were inhibited by the defendants' pricing practices.[7]

---

ted when the direct purchaser is owned or controlled by its customer. 431 U.S. at 736 n.16, 97 S.Ct. at 2070 n.16. In such a situation, market forces have been superceded and the proof problems inherent in a free market situation are obviated. *Cf. Perkins v. Standard Oil Co.*, 395 U.S. 642, 648, 89 S.Ct. 1871, 1874, 23 L.Ed.2d 599 (1969); *In re Western Liquid Asphalt Cases*, 487 F.2d 191, 195 (9th Cir. 1973), *cert. denied sub nom, Standard Oil Co. of California v. Alaska*, 415 U.S. 919, 94 S.Ct. 1419, 39 L.Ed.2d 474 (1974).

6. In *Obron v. Union Camp Corporation, supra,* the defendants successfully asserted the pass-on defense where it was shown that the plaintiffs had purchased at a five percent discount off the defendant's suggested list price and resold to their customers at list. In *In re Western Liquid Asphalt Cases, supra,* the court permitted indirect purchasers to use the pass-on theory offensively where it could be shown that the increased costs were "in fact borne by the plaintiffs." 487 F.2d at 196 n.5.

7. The court went on to state that the functional equivalence of the scheme involved in that case and the usual cost-plus contract situation was not lost simply because the indirect purchasers could not show that the direct purchasing middlemen did not also suffer some damage as a result of a drop in their sales volume. The court noted that when the pass-on theory is used offensively, "[t]he middleman's loss of volume and the indirect purchaser's absorption of the overcharge are wholly separable items of damage." 600 F.2d at 1164. In *Illinois Brick,* the Supreme Court also discussed the proof problems inherent in the offensive and defensive pass-on cases and noted that, at least in the latter type of case, the defendant must show that the direct purchaser did not suffer a loss of volume as a consequence of the overcharge. 431 U.S. at 732 n.13, 97 S.Ct. at 2067 n.13. *See also In re Western Liquid Asphalt Cases, supra,* 487 F.2d at 198. Commentators have also generally assumed that the impact of an overcharge on the direct purchaser's sales volume would not bar the offensive use of the passing-on theory. Note, *Scaling the Illinois Brick Wall: The Future of Indirect Purchasers in Antitrust Litigation,* 63 Cornell L.Rev. 309, 329 n.87 (1978); Note, *Recovery by Indirect Purchasers and the Functions of Antitrust Treble Damages,* 55 Tex.L.Rev. 1445, 1455 n.69 (1977). However, the United States Court of Appeals for the Third Circuit has held that indirect purchasers using the pass-on theory offensively must still show a pre-existing, fixed-quantity, cost-plus contract. The court explicitly rejected an approach that would dis-

Relying primarily on *In re Beef,* Ashland contends that the Mandatory Petroleum Allocation and Price Regulations, 10 C.F.R. §§ 211 and 212, impose the functional equivalent of a cost-plus pricing scheme upon direct gasoline purchasers such as Go-Tane, thus fitting the instant case within the exception recognized in *Hanover Shoe* and *Illinois Brick.* Ashland argues that if it can show, through discovery, that Go-Tane set its prices under the regulations so as to recover all its increased product costs by selling at the maximum lawful price, then it will have overcome the problems of speculative proof that troubled the Supreme Court in *Hanover Shoe* and *Illinois Brick.*[8] In the case at bar, however, the Mandatory Petroleum Allocation and Price Regulations governing Go-Tane's pricing decisions merely establish a formula for determining the *maximum* price that Go-Tane may charge its customers. Under the regulations, Go-Tane is clearly entitled to charge *less* than the maximum.[9] Indeed, Go-Tane maintains, and Ashland does not dispute, that it did charge its customers less than the maximum allowable price for several years in response to the forces of supply and de-

mand that created substantial competition in the retail gasoline market. Go-Tane's vice-president, Mr. Eugene V. Silveri, stated that from April, 1974, through May, 1979, the competition in the industry was such that Go-Tane was unable to recover its purchase price plus the allowable margin under the regulations and it was thus forced to sell at less than the maximum allowable level in order to remain competitive. *See* Silveri Deposition, October 29, 1980.

■ Accordingly, the impact of the regulations on Go-Tane's pricing could not have been known in advance since the regulations delineate *only one end of the possible price spectrum.* Ashland's sixth affirmative defense alleges that Go-Tane "passed through all charges" to its customers, but absent a pre-existing contractual or regulatory framework requiring such a pass-through there can be no justification for the pass-on defense. The speculative nature of Ashland's argument implicates the proof problems that the Supreme Court in *Illinois Brick* identified as the key to *Hanover Shoe. See Eastern Air Lines, Inc. v.*

pense with the fixed-quantity requirement in offensive use cases. *Mid-West Paper Products Co. v. Continental Group,* 596 F.2d 573, 577-78 n.9 (3d Cir. 1979). In any event, it has never been suggested that a party seeking to use the pass-on theory defensively, such as Ashland in the instant case, need not show that the direct purchaser *suffered no loss in volume* as a consequence of the asserted overcharge. *See* text accompanying note 10 *infra.*

8. Ashland misreads the applicable authority if it is contending that it should be allowed wide-ranging discovery in order to determine *if* Go-Tane set its prices under the regulations so as to recover all its increased costs. It was precisely this type of fishing expedition that the Supreme Court sought to avoid by its general bar on the use of the pass-on theory in *Hanover Shoe* and *Illinois Brick.* In order *to* present a legally sufficient argument based on either arm of the pass-on theory, the proponent of the theory must establish that a cost-plus contract or its functional equivalent was in existence so that its impact on the pricing decisions of the direct purchase could be known in advance. *Illinois Brick Co. v. Illinois, supra,* 431 U.S. at 736, 97 S.Ct. at 2069; *Eastern Air Lines, Inc. v. Atlantic Richfield Co.,* 609 F.2d 497, 499 (Emerg.Ct.App.1979); *Mid-West Paper Products Co. v. Continental Group, Inc.,* 596 F.2d

573, 578 n.9 (3d Cir. 1979). In rejecting the pass-on defense asserted by the defendant in *Eastern Air Lines, Inc., supra,* the Temporary Emergency Court of Appeals noted that, unlike the situation in *In re Beef,* Atlantic Richfield had failed to show "a *pre-existing* functional equivalent" of a cost-plus contract. 609 F.2d at 498 (emphasis in original). The court went on to say that:

we believe that *Illinois Brick* and *In re Beef Industry* both recognize that to be legally sufficient, any functional equivalent of a cost-plus contract exception to the *Hanover Shoe* ban against defensive use of passing on must be one that is already in existence, in that its impact on pricing decisions must be known in advance.

609 F.2d at 499.

9. The regulations permit merchants such as Go-Tane to "bank" increased product costs and save them until a subsequent period when they may be passed through to consumers without the loss of competitive position. *See* 10 C.F.R. § 212.93(e)(1). However, in some cases, any increased costs not recouped before July 16, 1979, apparently may not be carried forward and recouped after that date.

*Atlantic Richfield Co.*, 609 F.2d 497, 498–99 (Emerg.Ct. of App.1979).

 In addition to the fact that the regulations do not impose the functional equivalent of a cost-plus contractual scheme upon Go-Tane's relationship with its customers, Ashland's pass-on defense also fails because it has not shown that Go-Tane did not suffer a loss in volume as a result of the overcharges. While some courts and commentators have argued that an indirect purchaser seeking to use the pass-on theory offensively need not necessarily show that the direct purchaser has suffered no volume loss as a consequence of the alleged overcharge,[10] it has never been suggested that a supplier who invokes the pass-on theory defensively is exempt from such a showing. In *Illinois Brick* the Court explicitly stated that "[i]n the latter case, even if the defendant shows that as a result of the overcharge the direct purchaser increased its price by the full amount of the overcharge, the direct purchaser may still claim injury from a reduction in the volume of its sales caused by its higher prices." *Illinois Brick Co. v. Illinois, supra*, 431 U.S. at 732 n.13, 97 S.Ct. at 2067 n.13. As a prerequisite to asserting the pass-on defense, the proponent must show that "the [direct] purchaser is insulated from any decrease in its sales as a result of attempting to pass on the overcharge, because its customer is committed to buying a fixed quantity regardless of price." 431 U.S. at 736, 97 S.Ct. at 2069. In the instant case, Go-Tane's customers—retail gasoline consumers—are not committed to buying a fixed quantity of Go-Tane's gasoline regardless of price. They can either use less gasoline, or purchase it from a different retailer. Thus, even if Ashland established through discovery that Go-Tane was passing on the entire alleged overcharge to its customers and selling its product at the maximum lawful price, Ashland would not be entitled to assert the pass-on defense unless it could somehow demonstrate that Go-Tane's sales to its customers continued at the same level regardless of the price of its product. This speculative exercise would involve massive discovery, one of the pitfalls which the Court sought to avoid in *Hanover Shoe* and *Illinois Brick.*

The Court in *Hanover Shoe* also cited deterrence[11] of unlawful activity as a reason for limiting the availability of the pass-on defense in overcharge cases. If a direct purchaser's cause of action could be defeated by the pass-on defense, the wrongdoer might well retain the "fruits of [its] illegality" since the ultimate consumer would probably have little incentive to sue in its own behalf. *Hanover Shoe, Inc. v. United Shoe Machine Corp., supra*, 392 U.S. at 494, 88 S.Ct. at 2232. In creating a private right of action to redress violations of the price regulations, *see* section 210 of the Economic Stabilization Act of 1970, set out in the notes following 12 U.S.C.A. § 1904, Congress intended to ensure that violators would be discovered and deterred by persons bringing private lawsuits. *See* Senate Rep. No. 92–507, 92nd Cong., 1st Sess. (1971); H.R.Rep. No. 92–714, 92nd Cong., 1st Sess. at 8 (1971):

> The Committee, in line with the Administration's emphatic request for voluntary surveillance to assure compliance with price and rent regulations and orders, adopted this section so that it would serve as a strong deterrent to those who would willfully violate this Act.

In the context of the case at bar, Go-Tane's customers—retail gasoline purchasers—would have a very small stake in a potential suit against Ashland. If Ashland is permitted to assert the pass-on defense against Go-Tane, Ashland might be effectively immunized from suit on the overcharge theory, a result that concerned the Court in *Hanover Shoe.*

---

**10.** *See* note 7, *supra*.

**11.** Although the Supreme Court has noted that the proof problem inherent in the pass-on theory is the primary reason for the general bar on its use, *Illinois Brick Co. v. Illinois, supra*, 431 U.S. at 732 n.12, 97 S.Ct. at 2067 n.12, the concerns with deterrence still are relevant to any determination as to whether the pass-on theory may be asserted, particularly when the theory is asserted defensively.

Accordingly, Go-Tane's motion to strike Ashland's sixth affirmative defense is granted for the reasons set forth in this opinion.[12] It is so ordered.

12. To the extent that discovery is ongoing specifically as to the sixth affirmative defense, such discovery, of course, should cease in accordance with the results of this opinion.