Harvey **PASTAN**, as Trustee of Greenacre Trust, and Charter Development Corporation, Plaintiffs,

v.

**CITY OF MELROSE, et al.,**
**Defendants.**

Civ. A. No. 84–1147–T.

United States District Court,
D. Massachusetts.

Jan. 29, 1985.

Thomas R. Murtagh, Richard D. Gass, Jeffrey S. Robbins, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, Boston, Mass., for plaintiffs.

P. Sabin Willett, James F. McHugh, Bingham, Dana & Gould, Boston, Mass., for defendants.

## MEMORANDUM

TAURO, District Judge.

Developer Harvey Pastan and Charter Development Corporation brought this action challenging a taking of property by the city of Melrose which allegedly thwarted development of a residential condominium project. Their claim is that the defendants—the city of Melrose, the Mayor of Melrose, and the Melrose Board of Aldermen—condemned the property at the behest of a few Melrose homeowners solely for the purpose of blocking the project, in violation of the Fourteenth Amendment, 42 U.S.C. § 1983 and § 1985 (1982), Mass.Gen. Laws Ann. ch. 12, § 11I (West Supp.1984) and state common law.

## I.

The facts alleged in plaintiffs' complaint are accepted as true for the purposes of this motion to dismiss.

In early August 1983, Pastan contracted to purchase a parcel of land located predominantly in Saugus, Massachusetts on which he intended to build a residential condominium project to be known as Sheffield Woods. A small strip of the parcel that extended into Melrose (the "Melrose strip") was to be used as a secondary emergency access and egress route. The homeowners in the vicinity of the Melrose strip opposed the Sheffield Woods plan because they believed that the roadway would have an adverse effect on their neighborhood by hampering views and increasing traffic.

Despite the objections of the Melrose homeowners and the Mayor of Melrose, the Saugus Planning Board voted on April 3, 1984 to recommend that the Town Meeting approve Pastan's rezoning proposal. On April 5th, the Melrose Board of Aldermen convened a public meeting and voted unanimously to take the Melrose strip for use as a public park. On April 9th, after the Mayor of Melrose approved the taking, the Saugus Town Meeting tabled Pastan's rezoning proposal because Pastan was unable to provide a second means of emergency access and egress.

## II.

This case presents the question whether a taking of property for a clearly public use, such as a park, may be attacked under the Public Use Clause of the Fifth Amendment[1] on the ground that the motive for

---

**1.** The Fifth Amendment provides, in pertinent part, that "private property [shall not] be taken for public use, without just compensation." It is

the taking is solely to confer a private benefit.[2]

In *Hawaii Housing Authority v. Midkiff,* — U.S. ——, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984), the Supreme Court reaffirmed the broad scope of the eminent domain power and a state's authority to determine what is a public use. The Court noted that it "has made clear that it will not substitute its judgment for a legislature's judgment as to what constitutes a public use 'unless the use be palpably without reasonable foundation.'" [Citation omitted.] *Id.* 104 S.Ct. at 2329. The Court went on to instruct that, "where the exercise of the eminent domain power is rationally related to a conceivable public purpose, the Court has never held a compensated taking to be proscribed by the Public Use Clause." *Id.* 104 S.Ct. at 2329–30.

The Court's decision in *Hawaii* upheld the Hawaii Land Reform Act as a rational solution to Hawaii's land oligopoly problem. That Act provided a mechanism for taking residential tracts belonging to large landowners and transferring their ownership to existing lessees. In upholding the validity of the realty transfers, the Court rejected the argument that, because the property in issue was conveyed to private rather than public ownership, the program ran afoul of the Public Use Clause:

> The mere fact that property taken outright by eminent domain is transferred in the first instance to private beneficiaries does not condemn that taking as having only a private purpose. The Court long ago rejected any literal requirement that condemned property be put into use for the general public.

*Id.* 104 S.Ct. at 2331.

*Hawaii,* therefore, stands for the proposition that, as long as property taken by eminent domain is dedicated to a public purpose, the motives of the taking authority are irrelevant. This principle is consistent with that of the Seventh Circuit in its

opinion, *Green Street Ass'n. v. Daley,* 373 F.2d 1 (7th Cir.), *cert. denied,* 387 U.S. 932, 87 S.Ct. 2054, 18 L.Ed.2d 995 (1967), which held that, "Given a public purpose or use, the motives that underlie the exercise of that power may not be questioned." *Id.* at 6. *See also Atlantic Coastline R. Co. v. Town of Sebring,* 12 F.2d 679, 681 (5th Cir.1926) ("Where a particular taking of property for a public use has been authorized ..., a court is without jurisdiction to supervise the determination ... as to the necessity or expediency of taking the property selected, or to prevent the taking on the ground that the action ... was influenced by a purpose to benefit one or more property owners....").

Indeed, this principle is a logical refinement of the general concept that the motivation of a legislator in voting one way or another is irrelevant to any analysis of legislative construction or validity. In another context, this court has stated:

> [A]s is true in all cases of congressional action, the various legislators were motivated by a variety of factors. The debate affords us a view as to their movtives. But congressional motivation is of historical and not legal significance. Congressional motivation does not affect the legal consequences of congressional action.

*Drinan v. Nixon,* 364 F.Supp. 854, 865 (D.Mass.), *aff'd,* 502 F.2d 1158 (1st Cir. 1973).

Plaintiffs cite only one case in which the motives of a taking for a public use, such as a park, raised a constitutional issue. In that case, *Progress Development Corp. v. Mitchell,* 286 F.2d 222 (7th Cir.1961), village officials sought to build a public park on a piece of land that plaintiffs had announced they were going to use for the construction of integrated housing. The court ruled that plaintiffs would be entitled to relief under the civil rights laws if they could show that the sole purpose of the

---

made applicable to the States through the Fourteenth Amendment.

**2.** The court assumes, without deciding, that plaintiffs' contractual interest in the property in question is a property interest protected by the Fifth Amendment.

taking was to conspire to deny the plaintiff equal protection of the laws. *See Green Street Ass'n v. Daley,* 373 F.2d at 5–6 (discussing *Progress* holding).

In this case, plaintiffs make no claim that the defendants were motivated by racial animus, which might state a violation of the Equal Protection Clause.[3] Nor do plaintiffs maintain that defendants were motivated by religious designs or a desire to punish the expression of protected speech. *Cf. Epperson v. Arkansas,* 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968) (anti-evolution statute struck down because of religious purpose); *Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (discharge of teacher in retaliation for exercise of protected speech held unconstitutional).

Plaintiffs do maintain that it is proper for this court to look behind a facially public use where, as here, there is an allegation of bad faith and arbitrary and capricious action.[4] But that allegation asserts no more than an abuse of discretion by the defendants and does not rise to the level of a constitutional deprivation,[5] although it may be a violation of state law. To be sure, a violation of state law that deprives an individual of a property right may violate the Due Process Clause. *See, e.g., Roy v. City of Augusta,* 712 F.2d 1517 (1st Cir.1983).[6] But, a "mere bad faith refusal to follow state law in ... local

administrative matters simply does not amount to a deprivation of due process where the state courts are available to correct the error." *Chiplin Enterprises v. City of Lebanon,* 712 F.2d 1524, 1528 (1st Cir.1983). In this case, there is no reason to believe that that the Massachusetts courts would not consider plaintiffs' challenge that Melrose officials abused their discretion under the Commonwealth's eminent domain statute.

### III.

Assuming, arguendo, that motive is relevant to the authorization of a facially valid taking, the court finds the alleged motives of the Melrose officials to be valid. Stopping the development of exclusive residential condominiums because the project would create additional traffic, harm the aesthetic quality of life of nearby Melrose homeowners or diminish the value of their property may be parochial, but it is perfectly consistent with a rational view of the public interest of the city of Melrose. *Cf. Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 832 (1st Cir.), *cert. denied,* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982) (Planning board's rejection of development plan held not to violate Due Process where "it is merely indicated that town officials are motivated by parochial views of local interests which work against plaintiffs' plan and which may contravene state subdivision laws.") A taking

---

**3.** Plaintiffs concede that that their complaint fails to allege a class-based, invidious intent and, consequently, that their § 1985 count should be dismissed.

**4.** It is unclear whether this allegation simply restates the claim that the Board acted with an illicit motive, or whether it is meant to include other alleged factors such as the haste with which the Board acted, the lack of substantive debate at the Board meeting, and the fact that the taking was recorded by private citizens.

**5.** Similarly, allegations of fraud, bad faith or abuse in a federal taking go to the question whether the taking is authorized by Congress, not the question of public use. *See United States v. Carmack,* 329 U.S. 230, 243, 67 S.Ct. 252, 258, 91 L.Ed. 209 (1946). *But see United States v. 416.81 Acres of Land,* 514 F.2d 627, 632 (7th Cir.1975) (egregious bad faith may negate public use).

**6.** In *Suthoff v. Yazoo County Industrial Development Corp.,* 637 F.2d 337 (5th Cir.), *reh'g denied,* 642 F.2d 822 (1981), *cert. denied,* 454 U.S. 1157, 102 S.Ct. 1032, 71 L.Ed.2d 316 (1982), cited by plaintiffs, the court noted that "for purposes of maintaining initial federal jurisdiction, ... allegations that an individual's property rights have been damaged, through a municipality's arbitrary misuse of instituted but abandoned state-law expropriation proceedings [to force a landowner to sell his property to entities not entitled to take it by eminent domain], adequately state a claim of deprivation of property without due process of law in violation of the federal constitution." *Id.* at 340. The court emphasized, however, that it was not necessarily holding that plaintiffs would prevail if they established the facts alleged in the complaint.

does not become "private" simply because its immediate benefits will accrue only to a small number of persons. *See United States v. 416.81 Acres of Land,* 514 F.2d 627, 632 (7th Cir.1975) (upholding government's determination of public use of taking for a public park, even assuming government intended to aid a commercial seaport project). Elected town officials must have broad discretion to determine what is in the public interest.[7] The Board of Aldermen's view that a public park is preferable to an emergency access road and a neighboring condominium development is not so unreasonable as to violate the Public Use Clause of the Fifth Amendment.

Because plaintiffs have not been denied a federal right, their complaint fails to state a claim for relief under 42 U.S.C. § 1983. Accordingly, plaintiffs' complaint, including the state law counts, is dismissed. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). An order will issue.

---

**7.** Plaintiffs argue that judicial review of takings by local governments should be more stringent than review of takings by state legislatures or Congress because cities are more prone to corruption by powerful private interests. The assumption that there is a greater likelihood of abuse at the local level is certainly open to challenge and debate. Even if true, however, it does not follow that less deference is owed elected town officials. The Legislature and courts of the Commonwealth are perfectly capable of policing the cities and towns, whose only powers are those delegated from the state. *Cf. State v. Hutchinson,* 624 P.2d 1116 (Utah 1980) (abandoning rule requiring strict construction of powers delegated to cities).